Ronald W. JOHNSON, Jr., Appellant,

v.

**TEXAS DEPARTMENT OF TRANSPORTATION,**
Appellee.

No. 03–93–00471–CV.

Court of Appeals of Texas,
Austin.

Aug. 16, 1995.

Kevin B. Jackson, Andrews, for appellant.

Dan Morales, Atty. Gen., Ronald E. Garner, Asst. Atty. Gen., Highway Div., Austin, for appellee.

Before POWERS, JONES and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

Ronald W. Johnson, Jr. appeals from a take-nothing judgment, based on a directed verdict, in his causes of action for personal injuries brought against the Texas Department of Transportation (the "Department") under the Texas Tort Claims Act (the "Act").[1] We will affirm the trial-court judgment.

---

1. Tex.Civ.Prac. & Rem.Code Ann. §§ 101.001– .109 (West 1986 & Supp.1995). Section 101.021

## THE CONTROVERSY

In early morning darkness, Johnson drove a convertible automobile across Knickerbocker Road at its intersection with Spillway Road in Tom Green County, crashing into a barbed-wire fence on the far side of Knickerbocker and sustaining personal injuries. The following diagram illustrates the general circumstances:

Johnson alleged the Department was liable for his injuries on the following alternate theories: (1) the Department was negligent in certain acts and omissions described hereafter; (2) the intersection was a dangerous condition on Department land, a "premise defect"; or (3) certain aspects of the intersection amounted to a "special defect." [2] We need not discuss Johnson's negligence cause of action because, as we understand his petition, he complains of acts and omissions of the Department only insofar as they created

of the Act provides that a governmental unit in the state is liable for personal injury "caused by a condition or use of ... real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas Law." Act § 101.021(b). Johnson also sued Tom Green County. They settled and compromised their controversy before this appeal.

2. Various sections of the Act qualify the waiver of governmental immunity contained in section 101.021 of the Act. For example, section 101.022 specifies that in claims based upon a "premise defect," the governmental unit owes "only the duty [owed] to a licensee on private property, unless the claimant pays for the use of the premises." Act § 101.022(a). However, this limitation does not apply to: (1) "the duty to warn of special defects such as excavation or obstructions on highways, roads, or streets"; and (2) "the duty to warn of the ... condition ... of traffic signs ... or warning devices as is required by Section 101.060" of the Act. Id. § 101.022(a), (b).

either a "premise defect" or a "special defect," the subjects of his other two causes of action on which the trial court directed a take-nothing verdict at the close of the evidence.

## SUMMARY OF THE EVIDENCE

The following facts are undisputed in the evidence: Johnson sustained personal injuries when he drove his automobile across Knickerbocker and into the barbed-wire fence; because of the official classification of the intersecting roadways, Tom Green County bore responsibility for maintenance on Spillway while the Department bore such responsibility on Knickerbocker; the Department placed a stop sign within its Knickerbocker right-of-way some twenty feet from the traveled part of Spillway, at the approximate location shown in the diagram above; a Department engineer selected the location of the sign while supervising a construction project at the intersection approximately six months before the day Johnson sustained his injuries; and the sign was installed accordingly.

Johnson introduced evidence to the following effect: no signs on Spillway warned eastbound motorists they were approaching a stop sign, a through highway, or a "T" intersection; in approaching Knickerbocker, Johnson did not know the circumstances of the intersection; he was driving in excess of 52 miles per hour, which contributed to his injuries; the stop sign at Knickerbocker was obscured by trees and vegetation on Spillway; the location of the stop sign was such that a motorist driving at a prudent speed could not see the sign until it was too late to effect a timely stop at Knickerbocker; he was unfamiliar with Spillway and the intersection; a Department regulation required the placing of stop signs at a point six to twelve feet from the traveled part of the roadway;[3] as a stop sign is placed further than twelve feet, it becomes progressively more difficult for a motorist to see it, in his peripheral vision, in time to stop before entering the intersection; such was the case here where the sign was located some twenty feet from the traveled part of Spillway; the higher grade on Knickerbocker obscured in the dark the fact that another road intersected Spillway; the glow of lights from nearby businesses created an illusion that Spillway continued easterly without an intersection roadway; and the condition of the intersection was a contributing cause of his failure to effect a timely stop at Knickerbocker and of his resulting injuries.

The Department adduced evidence that a Department engineer, supervising the earlier construction project, had personally selected the location where the stop sign was erected at the intersection; because no part of the regulation specifically controlled the placement of signs at intersections such as the one involved here, any limitation mentioned in the manual did not apply; he was therefore free in his discretion to place the stop sign further than twelve feet from the traveled part of Spillway and did so, using his personal judgment in selecting the precise location; the stop sign was erected at the place he selected; and at the time the sign was erected no trees or vegetation obscured the sign from the view of motorists eastbound on Spillway.

At the close of the evidence, the Department moved for a directed verdict on the ground that all of Johnson's causes of action depended ultimately upon the single premise that the stop sign was placed too far from the traveled part of Spillway; the undisputed evidence showed that the engineer selected the sign's location in an exercise of his professional judgment and discretion; and as a matter of law the Department was immune from liability for such decisions. Concerning Johnson's theories of "design defect" and "special defect,"[4] the Department also

3. The regulation referred to is found in a Department publication entitled *Texas Manual on Uniform Traffic Control Devices for Streets and Highways*. The manual is expressly incorporated as a part of the *Texas Administrative Code* ("TAC"). *See* 43 TAC § 25.1 (1994). However, as explained below, the text of the regulation actually contradicts Johnson's expert's interpretation by stating that signs should be placed *no closer than* 6 or 12 feet from the roadway, depending on the shoulder.

4. In *State Department of Highways & Public Transportation v. Payne*, 838 S.W.2d 235, 237 (Tex.1992), the supreme court set out as follows the respective elements of a cause of action for

averred there was no evidence that any responsible Department employee actually knew that vegetation or trees along Spillway obscured the stop sign, and as a matter of law the Department had no duty to inspect Spillway so that it reasonably should have known of any dangerous conditions, such being the maintenance duty of Tom Green County under relevant statutory provisions.

The trial court sustained the motion for directed verdict and rendered judgment that Johnson take nothing. Johnson appeals.

## IMMUNITY FOR DISCRETIONARY DECISIONS

█ In Johnson's first point of error, he contends the trial court erred in taking the case from the jury because the body of evidence permitted the finding of a "premise defect." The Department rejoins that an action based upon a "premise defect," or a "special defect" for that matter, could not be maintained because Johnson's ultimate complaint—the placing of the stop sign—was the result of the engineer's exercise of judgment and discretion for which the state is immune from liability under sections 101.056(2) and 101.060(a) of the Act.[5] *See Maxwell v. Texas*

*Dep't of Transp.*, 880 S.W.2d 461, 463–64 (Tex.App.—Austin 1994, writ denied); *Villarreal v. State*, 810 S.W.2d 419, 422 (Tex. App.—Dallas 1991, writ denied) (roadway design is discretionary act); *Shives v. State*, 743 S.W.2d 714, 717 (Tex.App.—El Paso 1987, writ denied) (placement of stop sign is discretionary act). Recognizing the split in authority among Texas courts of appeals, this Court has decided that the discretionary nature of a governmental entity's actions is a question of law for the court to decide. *Wenzel v. City of New Braunfels*, 852 S.W.2d 97, 99 (Tex.App.—Austin 1993, no writ).

This Court in *Maxwell* recently reviewed the applicability of the sovereign immunity doctrine to the Department's decisions regarding highway design and the installation of traffic safety devices. In *Maxwell* we held *inter alia* that under the scheme established by the Act it was inappropriate for a court to second-guess the Department's choice or placement of safety devices. 880 S.W.2d at 464. In confirming the Department's authority to make these decisions, we distinguished the use of Department personnel's engineering skills to effectively implement its policy decisions from actions involving "occupational

---

an ordinary "premise defect" and a "special defect":

> *Premise defect:* (1) a condition of the premises created an unreasonable risk of harm to the licensee; (2) the owner *actually knew* of the condition; (3) the licensee did not actually know of the condition; (4) the owner failed to exercise ordinary care to protect the licensee from danger; and (5) the owner's failure was a proximate cause of injury to the licensee.
> *Special defect:* (1) a condition of the premises created an unreasonable risk of harm to the invitee; (2) the owner knew or *reasonably should have known* of the condition; (3) the owner failed to exercise ordinary care to protect the invitee from danger; and (4) the owner's failure was a proximate cause of injury to the invitee.

5. Section 101.056(2) provides as follows:

> This chapter does not apply to a claim based on:
> . . . .
> (2) a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.

Act § 101.056(2).

Section 101.060 provides as follows:

> (a) This chapter does not apply to a claim arising from:
> (1) the failure of a governmental unit initially to place a traffic or road sign, signal, or warning device if the failure is a result of discretionary action of the governmental unit;
> (2) the absence, condition, or malfunction of a traffic or road sign, signal, or warning device unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice; or
> (3) the removal or destruction of a traffic or road sign, signal, or warning device by a third person unless the governmental unit fails to correct the removal or destruction within a reasonable time after actual notice.
> (b) The signs, signals, and warning devices referred to in this section are those used in connection with hazards normally connected with the used of the roadway.
> (c) This section does not apply to the duty to warn of special defects such as excavations or roadway obstructions.

Act § 101.060.

or professional discretion" that may expose a governmental entity to liability. *Id.*

Johnson agrees that the Act bars any recovery for negligent design of the intersection. Instead, he argues that placement of the stop sign exposes the Department to liability in this instance because the sign's placement was a "condition" that "contribut[ed] to its obstruction by shrubs and trees." Thus, the real issue for decision is whether the stop sign's placement is an element of design, for which the Department is immune from liability, or a condition of the sign that subjects the Department to liability.

Interestingly, Johnson argues in support of his position that the Department violated its own *design* rules by placing the stop sign outside the guidelines set forth in the Manual on Uniform Traffic Control Devices. However, the Manual as read into evidence dictates that "[n]ormally, signs should *not be closer than* 6 feet from the edge of the shoulder, or if none, 12 feet from the edge of the traveled way." (Emphasis added.) In other words, the Manual guidelines establish a *minimum, not a maximum*, distance for locating signs near a road. The stop sign at issue was placed some twenty-two feet from the traveled roadway, well within the Manual's guidelines.

The dissent assigns great weight to Revised Civil Statute Article 6701d, section 91A(b), which directs *drivers* where to stop at intersections marked by a stop sign. Tex. Rev.Civ.Stat.Ann. art. 6701d, § 91A(b) (West 1977).[6] However, the legislature has addressed a specific directive to the Department: "Every [stop or yield] sign shall conform to the manual and specifications for uniform traffic-control devices as adopted by the [Department]. Every stop or yield sign shall be located as near as practicable at the nearest line of the ... roadway." *Id.* § 91(b) (West 1977). The Department engineer responsible for the design of this intersection acknowledged this statutory mandate: "My responsibility is to determine 'as possible.'" Just as the guidelines established in the Manual do not abridge the Department's discretion to exercise engineering judgment in design, *see* 43 TAC § 25.1(c); *State Dep't of*

*Highways & Pub. Transp. v. King*, 808 S.W.2d 465, 466 (Tex.1991); *Bellnoa v. City of Austin*, 894 S.W.2d 821, 824 (Tex.App.—Austin 1995, no writ), so too the statutory guideline "as near as practicable to the road" confirms that engineering judgment is essential to determine the proper placement of signs, taking into account visibility, stopping distance, the likelihood of signs being knocked down if placed too near the road, and other factors that must be considered. If a motorist's claim that a sign is difficult to see were sufficient to call into question the Department's design discretion, virtually any challenge to the placement of a traffic sign would suffice to preclude summary judgment on sovereign immunity grounds and subject the Department's engineering design in this limited area to a jury's review—even though the design and installation of other traffic devices is protected by immunity from judicial review. *See Maxwell*, 880 S.W.2d at 464.

Consequently, we reject any attempt to characterize the stop sign's placement as something other than a design decision shielded by the Department's sovereign immunity. Unlike the brush that partially obscured the sign at the time of the accident or an obvious flaw that prevents it from performing its desired function, the sign's location was an element of purposeful engineering design for which the Department and its engineers are immune from liability. Accordingly, we overrule Johnson's first point of error.

Because we conclude that the sign's placement was an element of design, and because Johnson offered no evidence that vegetation obscured the sign at the time of its initial installation, the question of the Department's knowledge regarding the placement is irrelevant. *Cf. State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992). Furthermore, although Johnson suggests that testimony of Department engineer Joe Lane raised a fact issue regarding the Department's knowledge of the condition of the sign at the time of the accident, Lane specifically denied any knowledge of the sign's condition after his final inspection ap-

---

6. We note that Johnson raises neither this statute nor the dissent's argument in his brief.

proximately three months before Johnson's accident. Johnson's second point of error is overruled.

## NO EVIDENCE OF A SPECIAL DEFECT

 In the case of a special defect, the governmental unit comes under a duty to know what reasonably should be known concerning any condition on the premises that creates an unreasonable risk of harm and a corresponding duty to warn of that condition. *Id.* "Whether a condition is a premise defect or a special defect is a question of duty involving statutory interpretation and thus an issue of law for the court to decide." *Id.* at 238.

The special-defect factor arises from the terms of section 101.022(b) of the Act, which provides that the governmental unit owes "a duty to warn of special defects such as excavations or obstructions on highways, roads, or streets." Act § 101.022(b).[7] In *County of Harris v. Eaton,* 573 S.W.2d 177, 179 (Tex. 1978), the supreme court limited the scope of "special defect" to that allowed by the rule of ejusdem generis. Consequently, a "special defect" must be of the same kind or class as an excavation or an obstruction on the highway. *Id.* The evidence does not show an excavation on any highway. While the evidence does show an obstruction of the *view* of the stop sign, as a result of vegetation and trees on Spillway, this is not an obstruction on the highway; at all events, that obstruction could not be attributed to the Department because it had no statutory duty regarding Spillway, a county road. We therefore overrule Johnson's third point of error in which he complains the trial court erred in ruling as a matter of law that the case did not involve a special defect.

## WAIVER

 In a "response point," the Department complains Johnson did not preserve a point of error based upon an ordinary premise defect because he failed to raise the point in his motion for rehearing in the trial court. We observe, however, that Johnson does not raise on appeal *any* point of error for which a motion for rehearing was a prerequisite. *See* Tex.R.Civ.P. 324. His motion for new trial was therefore sufficient, in our view, to preserve error on each of his alleged causes of action.

For the reasons given above, we affirm the trial-court judgment.

POWERS, Justice, dissenting.

I respectfully dissent. It is obvious that the choice of a stop-sign location is an act attended by official discretion and the Department is immune from liability when its engineer acts on his professional judgment and within that discretion. The word "discretion" signifies, however, a power to chose among alternatives *within legal bounds.* *Landon v. Jean–Paul Budinger, Inc.,* 724 S.W.2d 931, 935 (Tex.App.—Austin 1987, no writ). Official discretion is not absolute. No official or public servant may exercise his or her power in a manner that is contrary to law—the scope of official discretion does not extend so far. *To the extent* the law left the engineer no choice regarding the location of the stop sign, his duty in choosing a location was ministerial, not discretionary. *See City of Lancaster v. Chambers,* 883 S.W.2d 650, 653–54 (Tex.1994). Indeed, Department regulations restricted the engineer's discretion to this extent: the engineer was not free to select a stop-sign location in "conflict ... with ... applicable state laws." 43 Tex.Admin.Code § 25.1(b) (1995).

The Department might have decided that no stop sign was required in order to make the intersection reasonably safe for the motoring public. Had the Department been mistaken, no liability would have attached for the resulting "premises defect." Texas Tort Claims Act, Tex.Civ.Prac. & Rem.Code Ann. § 101.060(a)(1) (West 1986) (State shall not

---

7. Section 101.022(b) goes on to provide, in effect, that the governmental unit owes a "duty to warn of the absence, condition or malfunction of traffic signs, signals, or warning devices as is required by Section 101.060." Act § 101.022(b). Johnson does not raise this duty in his brief, but relies instead solely upon "a duty to warn of special defects such as excavations or obstructions on" the highway. Because Johnson does not raise the matter, we express no opinion regarding the applicability, under the evidence, of this duty to warn mentioned in the Act.

be liable for failure initially to place traffic or road sign if failure is result of discretionary action of governmental unit); *see Maxwell v. Texas Dep't of Transp.*, 880 S.W.2d 461, 463 (Tex.App.—Austin 1994, writ denied). In this instance, however, the Department decided that a stop sign *was* required to make the intersection reasonably safe, that is to say, a stop sign was necessary to preclude a resulting "premises defect." So much is implicit in the Department decision to erect the stop sign.

In carrying out the Department decision, the engineer had a lawful range of discretion in deciding where precisely to place the stop sign. He was, however, limited to this extent in the exercise of his discretion: he was not free to place the sign at a location that would defeat the very purpose of the stop sign, for that would negate the Department decision from which his discretion arose. The sole purpose of a stop sign is to give timely notice to approaching motorists that they have come under a statutory duty to stop their motor vehicle at the proper point *before entering the intersection.* Tex.Rev.Civ.Stat. Ann. art. 6701d, § 91A(b) (West 1977). The "applicable state laws" thus also restricted the permissible scope of the engineer's discretion. He was *not* lawfully free to select a location so far down Knickerbocker Road that a motorist approaching the intersection on Spillway Road could not possibly see the sign in time to stop before entering the intersection. It is unreasonable to suppose that the legislature, in its enactment of sections 101.056(2) and 101.060(a) of the Texas Tort Claims Act, intended to allow immunity for "discretionary" decisions taken in violation of the legislature's own enactment and the official decisions of the Department. Tex.Civ. Prac. & Rem.Code Ann. §§ 101.056(2), .060(a) (West 1986).

*Turning then to the evidence, one finds* testimony that the engineer did, indeed, exceed the lawful bounds of his discretion in choosing a location for the stop sign. A witness who lived near the intersection and traveled frequently toward it along Spillway Road testified that the location of the stop sign, about twenty feet down Knickerbocker Road from the traveled part of Spillway, *made it impossible for a motorist to see the sign* in time to stop before entering the intersection. This explicit testimony referred not to the presence or absence of vegetation but to the acuteness of the angle made by placing the stop sign so far from Spillway Road. Such evidence, in my view, squarely raised the issue of a premises defect and precluded a directed verdict. *See Henderson v. Travelers Ins. Co.*, 544 S.W.2d 649, 654 (Tex.1976) (directed verdict precluded unless evidence of a fact amounts to no more than surmise or suspicion).

I would therefore sustain Johnson's first point of error.