TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-09-00154-CV






Greg Abbott, Attorney General of Texas, Appellant


v.


Texas Board of Nursing, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT

NO. D-1-GN-07-002685, HONORABLE DARLENE BYRNE, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N



 This appeal concerns a request for information under the Texas Public Information
Act involving business facsimile numbers of nurses collected and maintained by the Texas Board
of Nursing (the "Board"). (1) See Tex. Gov't Code Ann. §§ 552.001-.353 (West 2004 & Supp. 2009)
(the "Act"). The Board believed that the facsimile numbers were excepted from disclosure because
they were "confidential by law" under section 552.101 of the Act in conjunction with section
418.176(a) of the government code and sought a letter ruling from the Office of the Attorney
General. See id. §§ 418.176(a) (West 2005), 552.101 (West 2004). After the attorney general issued
a letter ruling concluding that the facsimile numbers were subject to disclosure under the Act, the
Board filed suit challenging this ruling and seeking to withhold the requested information. The
Board and the attorney general filed competing motions for summary judgment, and the district court
granted summary judgment in favor of the Board. Because we conclude that the Board failed to
show that the facsimile numbers are excepted from disclosure under the Act as a matter of law, we
reverse the district court's judgment and render judgment in favor of the attorney general. 

 

BACKGROUND


 The Board is the state agency charged with regulating the practice of professional and
vocational nurses. See Tex. Occ. Code Ann. § 301.151 (West 2004). In 2002, the Board began
collecting business facsimile numbers of nurses that it licensed based upon a recommendation by
the Governor's Task Force on Homeland Security. The Task Force was created and charged with
making recommendations to the governor (i) to assure state and local preparedness to respond to
terrorist threats, (ii) to facilitate coordination between federal, state, and local agencies to respond
to threats, and (iii) to assess the ability of state and local government agencies to respond to threats. 
In its January 2002 report, the Task Force recommended that the governor request "all health
licensing organizations and agencies to require licensees to provide business fax numbers and
e-mail addresses." 

 On May 17, 2007, the Board received a request for public information from
Mr. Eddie McKibben, president and CEO of Optimum Healthcare. He requested "all fax numbers
that [the Board] may have in [its] data base for any and all nurses in the State of Texas." The Board
believed that the requested numbers were confidential and timely requested an open-records ruling
from the Office of the Attorney General whether disclosure of the facsimile numbers was required
under the Act. See Tex. Gov't Code Ann. § 552.301 (West Supp. 2009). The Board asserted that
the facsimile numbers were excepted from disclosure under section 552.101 of the Act in
conjunction with section 418.176(a) of the government code that makes confidential certain
information relating to an "emergency response provider." See id. §§ 418.176(a), 552.101. The
Board, however, did not provide a copy of the requested information that the Board sought
to withhold or a representative sample with its request to the attorney general. See
id. § 552.301(e)(1)(D).

 The attorney general issued a letter opinion ordering the requested information
released pursuant to section 552.302. See id. § 552.302 (West Supp. 2009). Because the Board did
not provide a copy of the requested information or a representative sample, the attorney general
declined to issue a substantive ruling, presumed the information requested was public, and ordered
the business facsimile numbers disclosed. The Board thereafter filed this suit challenging the
attorney general's determination. See id. § 552.324 (West Supp. 2009). The Board notified the
requestor, but the requestor did not intervene in the suit. See id. § 552.325 (West Supp. 2009).

 The parties filed competing motions for summary judgment. The Board urged that
it was not required to provide a representative sample of the requested information to the attorney
general to comply with section 552.301 of the Act and that the requested information was
confidential by law under section 418.176 of the government code. The Board contended that it
collected the facsimile numbers for the purpose of responding to an act of terrorism or related
criminal activity and pursuant to recommendations of the Governor's Task Force on
Homeland Security. The Board's summary judgment evidence included excerpts from the Task
Force's January 2002 report to the Governor and the affidavits of Mark Majek and Clair Jordan. 
Majek averred that (i) he was the Board's director of operations, (ii) in response to the Task Force's
recommendation, the Board began collecting the business facsimile numbers of its nurses through
its application forms, and (iii) the application forms were changed to include business facsimile
numbers for "no other reason." Jordan averred that she was licensed as a registered nurse by the
State of Texas and the executive director of Texas Nurses Association (TNA) and discussed the role
TNA and nurses play in responding to emergencies in Texas, both at the state and local level. 

 The attorney general countered that it was entitled to summary judgment because the
"confidential by law" exception to disclosure in conjunction with section 418.176(a)(3) did not apply
to the business facsimile numbers and that the Board was required to show a compelling reason
because it did not provide a representative sample or a copy of the requested information. The
attorney general's evidence included the Board's responses to discovery and a chart that the Board
prepared as part of its strategic plan for the fiscal years 2009 to 2013. 

 In its discovery responses, the Board stated that it is a "governmental entity that
collects the contact information (including fax numbers) of Texas nurses, who are 'emergency
response providers' within the meaning of section 418.176." The Board also admitted that it did not
provide emergency services and described its role under the State of Texas Emergency Management
Plan to be "working with DSHS [Texas Department of State Health Services] to provide procedures
to local governments to verify the professional licensure of nurses from other states for practice in
the State of Texas during disaster response." (2) The statistical information in the chart shows licensed
registered nurses' primary places of employment during the time period 1995 to 2007. The primary
places of employment included "Nursing Home/Extended Care," "Physician/Dentist Office,"and
"Home Health Agency." After a hearing, the district court granted final summary judgment in favor
of the Board. This appeal followed.


ANALYSIS


 In two issues, the attorney general challenges the district court's summary judgment
ruling. The attorney general contends that (i) the Board failed to meet its burden to prove, as a
matter of law, that section 418.176(a)(3) of the government code applied to the business facsimile
numbers that the Board collected and maintained of its licensees and (ii) the Board was required to
show a compelling reason to withhold the information because it failed to provide the attorney
general with the requested information or a representative sample.

 

Standard of Review

 

 We review the trial court's decision to grant summary judgment de novo. Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a summary judgment
motion, the movant must demonstrate that there are no genuine issues of material fact and that it is
entitled to judgment as a matter of law. See Tex. R. Civ. P. 166a(c). When both parties move for
summary judgment on the same issues and the trial court grants one motion and denies the other, as
here, the reviewing court considers the summary judgment evidence presented by both sides,
determines all questions presented, and, if the reviewing court determines that the trial court erred,
renders the judgment the trial court should have rendered. Dorsett, 164 S.W.3d at 661. 

 We also review issues of statutory construction de novo. City of San Antonio v. City
of Boerne, 111 S.W.3d 22, 25 (Tex. 2003). When construing a statute, we begin with its language. 
State v. Shumake, 199 S.W.3d 279, 284 (Tex. 2006). "Our primary objective is to determine the
Legislature's intent which, when possible, we discern from the plain meaning of the words chosen." 
Id. (citing City of San Antonio, 111 S.W.3d at 25). If the statute is clear and unambiguous, we apply
its words according to their common meaning. Id. (citing Fitzgerald v. Advanced Spine Fixation
Sys., Inc., 996 S.W.2d 864, 865-66 (Tex. 1999)). We interpret statutory terms consistently in every
part of an act. Texas Dep't of Transp. v. Needham, 82 S.W.3d 314, 318 (Tex. 2002). In construing
an undefined statutory term, courts should not give the term "a meaning out of harmony or
inconsistent with other provisions, although it might be susceptible of such a construction if standing
alone." Id.; see also Tex. Gov't Code Ann. § 311.011 (West 2005) ("Words and phrases shall be
read in context. . . ."). 

 Determining whether an exception applies under the Act to support withholding
public information is a question of law. City of Garland v. Dallas Morning News, 22 S.W.3d 351,
357 (Tex. 2000); Simmons v. Kuzmich, 166 S.W.3d 342, 346 (Tex. App.--Fort Worth 2005, no pet.);
City of Fort Worth v. Cornyn, 86 S.W.3d 320, 323 (Tex. App.--Austin 2002, no pet.). We construe
the Act liberally in favor of granting requests for information. Tex. Gov't Code Ann. § 552.001(b). 
And exceptions to disclosure are narrowly construed. City of Garland, 22 S.W.3d at 365. 


Section 418.176 of the government code 


 In his first issue, the attorney general contends that the Board failed to meet its burden
to prove, as a matter of law, that section 418.176(a)(3) of the government code applied to the
business facsimile numbers of nurses that the Board collected and maintained to support
excepting the numbers from disclosure under section 552.101 of the Act. See Tex. Gov't Code
Ann. §§ 418.176(a)(3), 552.101. 

 The parties agree that the business facsimile numbers at issue are "public
information" subject to disclosure under the Act unless an exception applies. See id. §§ 552.002(a)
(West 2004) ("public information" defined), .006 (West 2004) ("This chapter does not authorize
the withholding of public information . . . , except as expressly provided by this chapter."). And
the Board, as the governmental agency withholding documents under an exception to the Act,
bears the burden of proving the exception applies. See Abbott v. Texas Dep't of Mental Health
& Mental Retardation, 212 S.W.3d 648, 655 (Tex. App.--Austin 2006, no pet.); Thomas v. Cornyn,
71 S.W.3d 473, 488 (Tex. App.--Austin 2002, no pet.). 

 The Board relies upon the exception in section 552.101 of the Act that "[i]nformation
is excepted [from disclosure] if it is information considered to be confidential by law, either
constitutional, statutory, or by judicial decision." See Tex. Gov't Code Ann. § 552.101. The Board
urges that section 552.101 excepts the requested information from disclosure because that
information is considered confidential under section 418.176(a) of the government code. 

 Section 418.176(a) of the government code makes certain information confidential
that concerns the prevention, detection, response and investigation of acts of terrorism or related
criminal activity:


 (a) Information is confidential if the information is collected, assembled, or
maintained by or for a governmental entity for the purpose of preventing,
detecting, responding to, or investigating an act of terrorism or related
criminal activity and:

 

 (1) relates to the staffing requirements of an emergency response
provider, including a law enforcement agency, a fire-fighting agency,
or an emergency services agency;

 

 (2) relates to a tactical plan of the provider; or

 

 (3) consists of a list or compilation of pager or telephone numbers,
including mobile and cellular telephone numbers, of the provider.



Tex. Gov't Code Ann. § 418.176(a). 

 The Board does not contend that it is an "emergency response provider" within the
meaning of that term in section 418.176. (3) See id. It urges that it is a "governmental entity" within
the meaning of subsection (a) that collected the business facsimile numbers of nurses for the sole
purpose of responding to an act of terrorism or related criminal activity and that the nurses that it
licenses are "emergency response providers" within that term's common meaning. Therefore, it
urges that the nurses' business facsimile numbers the Board maintains constitute a "list or
compilation of pager or telephone numbers . . . of the provider[s]"--i.e., the nurses--within
the meaning of subsection (3). The Board also relies upon the affidavits of Mark Majek and
Clair Jordan. Majek averred that the Board only began collecting the facsimile numbers based upon
the recommendation of the Task Force in 2002 and "for no other reason." Jordan averred concerning
the role nurses play in emergencies, both at the local and state level. 

 The attorney general counters, among its arguments, that "emergency response
provider" refers to emergency types of entities, not individuals such as the nurses here. The attorney
general contends that the Board's sole cause for possession of the business facsimile numbers is the
nurses' licensee status and that the statute does not support an interpretation that makes individual
nurses "emergency response provider[s]" based upon their licensee status with the Board. The
attorney general relies upon the plain meaning of the language in the statute, the statistical
information in the chart that the Board prepared showing practice areas of Texas nurses, including
non-emergency types of practice areas, and the Board's agreement that it is not an emergency
response provider and that it does nothing with the business facsimile numbers once collected.

 This appeal turns on the meaning of "emergency response provider" within the
statute. See id. There are three references to "emergency response provider" in section 418.176(a). 
Subsection (1) refers to the "staffing requirements of an emergency response provider" and defines
"emergency response provider" as including "a law enforcement agency, a fire-fighting agency, or
an emergency services agency." See Tex. Gov't Code Ann. § 418.176(a)(1). The Board, a licensing
agency, concedes that it is not an "emergency response provider" within the term's meaning in
section 418.176(a). See Tex. Gov't Code Ann. § 418.176(a). (4) 

 Further, the reference to "staffing requirements" in subsection (1) also supports that
the legislature did not intend to include individuals, such as the licensed nurses here, but
"emergency response" types of entities within the meaning of "emergency response providers." 
See id. § 418.176(a)(1); Needham, 82 S.W.3d at 318. Individual nurses would not commonly have
"staffing requirements" in contrast to the entities that employ individual nurses. See Tex. Gov't
Code Ann. § 418.176(a)(1). The evidence was undisputed that the Board does not employ its
licensed nurses or provide emergency services. 

 The other two references to "provider" in section 418.176(a) are consistent that the
legislature did not intend to include individuals, such as the nurses here, within the meaning of
"emergency response provider." Subsection (2) refers to the "tactical plan of the provider" and
subsection (3) refers to a "list or compilation of pager or telephone numbers . . . of the provider." 
See id. § 418.176(a)(2), (3); Needham, 82 S.W.3d at 318. Again, an individual nurse would not
commonly maintain a "tactical plan" or "list or compilation of pager or telephone numbers" in
contrast with the entity that employs her. See Tex. Gov't Code Ann. § 418.176(a)(2), (3);
see also id. § 311.011. 

 The Board relies upon section 418.171 of the government code to support its
interpretation of section 418.176(a) that individual nurses were intended to fall within the definition
of "emergency response provider." See id. § 418.171 (West 2005). Section 418.171 authorizes
individuals licensed in other states to render aid in this state to meet an emergency or disaster:


 A person who holds a license, certificate, or other permit issued by a state or political
subdivision of any state evidencing the meeting of qualifications for professional,
mechanical, or other skills may render aid involving the skill in this state to meet an
emergency or disaster. This state shall give due consideration to the license,
certificate, or other permit. 



See id. That out-of-state persons, including nurses who are licensed in another state, are authorized
and do respond to emergencies in Texas does not support broadening the definition of "emergency
response provider" in section 418.176(a) to include individual nurses based upon their licensee status
with the Board. See City of Garland, 22 S.W.3d at 365 (exceptions are to be narrowly construed).

 We conclude that the plain language of section 418.176(a) is clear that the legislature
did not intend for the term "emergency response provider" to include wholesale the individual nurses
licensed by the Board. See Shumake, 199 S.W.3d at 284; City of Garland, 22 S.W.3d at 365. 
Moreover, the attorney general's interpretation of section 418.176(a) that nurses licensed by the
Board are not included within the meaning of "emergency response provider" is reasonable. 
See Rainbow Group, Ltd. v. Texas Employment Comm'n, 897 S.W.2d 946, 949 (Tex. App.--Austin
1995, writ denied) (reviewing court gives due consideration to attorney general decisions in
cases involving the Act). We, therefore, conclude as a matter of law that the business facsimile
numbers of nurses collected and maintained by the Board are not excepted from disclosure pursuant
to section 552.101 of the Act in conjunction with section 418.176(a) of the government code. See
Tex. Gov't Code Ann. §§ 418.176(a), 552.101; Shumake, 199 S.W.3d at 284. We sustain the
attorney general's first issue. (5) 

 Having sustained the attorney general's first issue, we need not reach his second issue
that the Board was required to provide a copy of the requested information or a representative sample 
to the attorney general. See Tex. R. App. P. 47.1. 


CONCLUSION


 Because we conclude that the Board failed to show as a matter of law that the
business facsimile numbers of nurses collected and maintained by the Board are excepted from
disclosure under the Act as a matter of law, we reverse the district court's judgment in favor of the
Board and render judgment in the attorney general's favor that the business facsimile numbers are
subject to disclosure under the Act. 


 

 __________________________________________

 Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Pemberton

 Concurring Opinion by Justice Pemberton


Reversed and Rendered 


Filed: February 3, 2010


1. Texas Board of Nursing was formerly known as Texas Board of Nurse Examiners. 
See Tex. Occ. Code Ann. §§ 301.002(1), .005 (West Supp. 2009). 
2. In its responses to requests for admission, the Board admitted that it is not listed as a
primary or support agency for any Emergency Support Function in the State of Texas Emergency
Management Plan. In response to interrogatories, the Board answered "None known" when asked
to "describe each and every emergency service that [the Board] provided" and to "[s]tate the dollar
amount of [the Board]'s budget that it spends on emergency response."
3. The Board's discovery responses show that it does not provide emergency services or play
a role in the State's emergency communication system in the event of an act of terrorism. 
4. That the Board does not fall within the meaning of "emergency response provider" is
consistent with the rule of ejusdem generis. The rule of ejusdem generis "provides that when words
of a general nature are used in connection with the designation of particular objects or classes of
persons or things, the meaning of the general words will be restricted to the particular designation." 
Hilco Elec. Coop. v. Midlothian Butane Gas Co., 111 S.W.3d 75, 81 (Tex. 2003). Under the rule
of ejusdem generis, courts interpret a statute containing an illustrative list to include only items of
the same kind or class as those expressly mentioned. See Johnson v. Texas Dep't of Transp.,
905 S.W.2d 394, 399 (Tex. App.--Austin 1995, no writ). Although the listed agencies are not
exclusive, they are consistent with a legislative intent to address confidential information held by
classes or types of entities that provide emergency services. See Tex. Gov't Code Ann.
§ 418.176(a)(1)(West 2005). 
5. Because we have concluded that the plain language of section 418.176(a) does not support
the Board's interpretation of "emergency response provider," we need not address the attorney
general's additional arguments for reversing the district court's judgment, such as the legislative
history of this section. See Tex. Gov't Code Ann. § 418.176(a) (West 2005); Tex. R. App. P. 47.1;
see also Mills v. Fletcher, 229 S.W.3d 765, 769 (Tex. App.--San Antonio 2007, no. pet.) (given
clear language used in statute, appellate court need not consider legislative history); Welmaker
v. Cuellar, 37 S.W.3d 550, 552 n.6 (Tex. App.--Austin 2001, pet. denied) (same).