# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-09-00154-CV

Greg Abbott, Attorney General of Texas, Appellant

v.

Texas Board of Nursing, Appellee

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
NO. D-1-GN-07-002685, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

# M E M O R A N D U M   O P I N I O N

This appeal concerns a request for information under the Texas Public Information Act involving business facsimile numbers of nurses collected and maintained by the Texas Board of Nursing (the "Board").[1] *See* Tex. Gov't Code Ann. §§ 552.001-.353 (West 2004 & Supp. 2009) (the "Act"). The Board believed that the facsimile numbers were excepted from disclosure because they were "confidential by law" under section 552.101 of the Act in conjunction with section 418.176(a) of the government code and sought a letter ruling from the Office of the Attorney General. *See id*. §§ 418.176(a) (West 2005), 552.101 (West 2004). After the attorney general issued a letter ruling concluding that the facsimile numbers were subject to disclosure under the Act, the Board filed suit challenging this ruling and seeking to withhold the requested information. The

---

[1] Texas Board of Nursing was formerly known as Texas Board of Nurse Examiners. *See* Tex. Occ. Code Ann. §§ 301.002(1), .005 (West Supp. 2009).

Board and the attorney general filed competing motions for summary judgment, and the district court granted summary judgment in favor of the Board. Because we conclude that the Board failed to show that the facsimile numbers are excepted from disclosure under the Act as a matter of law, we reverse the district court's judgment and render judgment in favor of the attorney general.

## BACKGROUND

The Board is the state agency charged with regulating the practice of professional and vocational nurses. *See* Tex. Occ. Code Ann. § 301.151 (West 2004). In 2002, the Board began collecting business facsimile numbers of nurses that it licensed based upon a recommendation by the Governor's Task Force on Homeland Security. The Task Force was created and charged with making recommendations to the governor (i) to assure state and local preparedness to respond to terrorist threats, (ii) to facilitate coordination between federal, state, and local agencies to respond to threats, and (iii) to assess the ability of state and local government agencies to respond to threats. In its January 2002 report, the Task Force recommended that the governor request "all health licensing organizations and agencies to require licensees to provide business fax numbers and e-mail addresses."

On May 17, 2007, the Board received a request for public information from Mr. Eddie McKibben, president and CEO of Optimum Healthcare. He requested "all fax numbers that [the Board] may have in [its] data base for any and all nurses in the State of Texas." The Board believed that the requested numbers were confidential and timely requested an open-records ruling from the Office of the Attorney General whether disclosure of the facsimile numbers was required under the Act. *See* Tex. Gov't Code Ann. § 552.301 (West Supp. 2009). The Board asserted that

the facsimile numbers were excepted from disclosure under section 552.101 of the Act in conjunction with section 418.176(a) of the government code that makes confidential certain information relating to an "emergency response provider." *See id*. §§ 418.176(a), 552.101. The Board, however, did not provide a copy of the requested information that the Board sought to withhold or a representative sample with its request to the attorney general. *See id.* § 552.301(e)(1)(D).

The attorney general issued a letter opinion ordering the requested information released pursuant to section 552.302. *See id.* § 552.302 (West Supp. 2009). Because the Board did not provide a copy of the requested information or a representative sample, the attorney general declined to issue a substantive ruling, presumed the information requested was public, and ordered the business facsimile numbers disclosed. The Board thereafter filed this suit challenging the attorney general's determination. *See id*. § 552.324 (West Supp. 2009). The Board notified the requestor, but the requestor did not intervene in the suit. *See id*. § 552.325 (West Supp. 2009).

The parties filed competing motions for summary judgment. The Board urged that it was not required to provide a representative sample of the requested information to the attorney general to comply with section 552.301 of the Act and that the requested information was confidential by law under section 418.176 of the government code. The Board contended that it collected the facsimile numbers for the purpose of responding to an act of terrorism or related criminal activity and pursuant to recommendations of the Governor's Task Force on Homeland Security. The Board's summary judgment evidence included excerpts from the Task Force's January 2002 report to the Governor and the affidavits of Mark Majek and Clair Jordan.

3

Majek averred that (i) he was the Board's director of operations, (ii) in response to the Task Force's recommendation, the Board began collecting the business facsimile numbers of its nurses through its application forms, and (iii) the application forms were changed to include business facsimile numbers for "no other reason." Jordan averred that she was licensed as a registered nurse by the State of Texas and the executive director of Texas Nurses Association (TNA) and discussed the role TNA and nurses play in responding to emergencies in Texas, both at the state and local level.

The attorney general countered that it was entitled to summary judgment because the "confidential by law" exception to disclosure in conjunction with section 418.176(a)(3) did not apply to the business facsimile numbers and that the Board was required to show a compelling reason because it did not provide a representative sample or a copy of the requested information. The attorney general's evidence included the Board's responses to discovery and a chart that the Board prepared as part of its strategic plan for the fiscal years 2009 to 2013.

In its discovery responses, the Board stated that it is a "governmental entity that collects the contact information (including fax numbers) of Texas nurses, who are 'emergency response providers' within the meaning of section 418.176." The Board also admitted that it did not provide emergency services and described its role under the State of Texas Emergency Management Plan to be "working with DSHS [Texas Department of State Health Services] to provide procedures to local governments to verify the professional licensure of nurses from other states for practice in the State of Texas during disaster response."[2] The statistical information in the chart shows licensed

_____

[2] In its responses to requests for admission, the Board admitted that it is not listed as a primary or support agency for any Emergency Support Function in the State of Texas Emergency Management Plan. In response to interrogatories, the Board answered "None known" when asked

4

registered nurses' primary places of employment during the time period 1995 to 2007. The primary places of employment included "Nursing Home/Extended Care," "Physician/Dentist Office,"and "Home Health Agency." After a hearing, the district court granted final summary judgment in favor of the Board. This appeal followed.

## ANALYSIS

In two issues, the attorney general challenges the district court's summary judgment ruling. The attorney general contends that (i) the Board failed to meet its burden to prove, as a matter of law, that section 418.176(a)(3) of the government code applied to the business facsimile numbers that the Board collected and maintained of its licensees and (ii) the Board was required to show a compelling reason to withhold the information because it failed to provide the attorney general with the requested information or a representative sample.

### *Standard of Review*

We review the trial court's decision to grant summary judgment *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a summary judgment motion, the movant must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c). When both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, as here, the reviewing court considers the summary judgment evidence presented by both sides,

---

to "describe each and every emergency service that [the Board] provided" and to "[s]tate the dollar amount of [the Board]'s budget that it spends on emergency response."

determines all questions presented, and, if the reviewing court determines that the trial court erred, renders the judgment the trial court should have rendered. *Dorsett*, 164 S.W.3d at 661.

We also review issues of statutory construction *de novo*. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). When construing a statute, we begin with its language. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). "Our primary objective is to determine the Legislature's intent which, when possible, we discern from the plain meaning of the words chosen." *Id.* (citing *City of San Antonio*, 111 S.W.3d at 25). If the statute is clear and unambiguous, we apply its words according to their common meaning. *Id.* (citing *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865-66 (Tex. 1999)). We interpret statutory terms consistently in every part of an act. *Texas Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002). In construing an undefined statutory term, courts should not give the term "a meaning out of harmony or inconsistent with other provisions, although it might be susceptible of such a construction if standing alone." *Id.*; *see also* Tex. Gov't Code Ann. § 311.011 (West 2005) ("Words and phrases shall be read in context. . . .").

Determining whether an exception applies under the Act to support withholding public information is a question of law. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 357 (Tex. 2000); *Simmons v. Kuzmich*, 166 S.W.3d 342, 346 (Tex. App.—Fort Worth 2005, no pet.); *City of Fort Worth v. Cornyn*, 86 S.W.3d 320, 323 (Tex. App.—Austin 2002, no pet.). We construe the Act liberally in favor of granting requests for information. Tex. Gov't Code Ann. § 552.001(b). And exceptions to disclosure are narrowly construed. *City of Garland*, 22 S.W.3d at 365.

6

*Section 418.176 of the government code*

In his first issue, the attorney general contends that the Board failed to meet its burden to prove, as a matter of law, that section 418.176(a)(3) of the government code applied to the business facsimile numbers of nurses that the Board collected and maintained to support excepting the numbers from disclosure under section 552.101 of the Act. *See* Tex. Gov't Code Ann. §§ 418.176(a)(3), 552.101.

The parties agree that the business facsimile numbers at issue are "public information" subject to disclosure under the Act unless an exception applies. *See id*. §§ 552.002(a) (West 2004) ("public information" defined), .006 (West 2004) ("This chapter does not authorize the withholding of public information . . . , except as expressly provided by this chapter."). And the Board, as the governmental agency withholding documents under an exception to the Act, bears the burden of proving the exception applies. *See Abbott v. Texas Dep't of Mental Health & Mental Retardation*, 212 S.W.3d 648, 655 (Tex. App.—Austin 2006, no pet.); *Thomas v. Cornyn*, 71 S.W.3d 473, 488 (Tex. App.—Austin 2002, no pet.).

The Board relies upon the exception in section 552.101 of the Act that "[i]nformation is excepted [from disclosure] if it is information considered to be confidential by law, either constitutional, statutory, or by judicial decision." *See* Tex. Gov't Code Ann. § 552.101. The Board urges that section 552.101 excepts the requested information from disclosure because that information is considered confidential under section 418.176(a) of the government code.

Section 418.176(a) of the government code makes certain information confidential that concerns the prevention, detection, response and investigation of acts of terrorism or related criminal activity:

(a)     Information is confidential if the information is collected, assembled, or maintained by or for a governmental entity for the purpose of preventing, detecting, responding to, or investigating an act of terrorism or related criminal activity and:

(1)     relates to the staffing requirements of an emergency response provider, including a law enforcement agency, a fire-fighting agency, or an emergency services agency;

(2)     relates to a tactical plan of the provider; or

(3)     consists of a list or compilation of pager or telephone numbers, including mobile and cellular telephone numbers, of the provider.

Tex. Gov't Code Ann. § 418.176(a).

The Board does not contend that it is an "emergency response provider" within the meaning of that term in section 418.176.[3] *See id.* It urges that it is a "governmental entity" within the meaning of subsection (a) that collected the business facsimile numbers of nurses for the sole purpose of responding to an act of terrorism or related criminal activity and that the nurses that it licenses are "emergency response providers" within that term's common meaning. Therefore, it urges that the nurses' business facsimile numbers the Board maintains constitute a "list or compilation of pager or telephone numbers . . . of the provider[s]"—i.e., the nurses—within

_____

[3] The Board's discovery responses show that it does not provide emergency services or play a role in the State's emergency communication system in the event of an act of terrorism.

8

the meaning of subsection (3). The Board also relies upon the affidavits of Mark Majek and Clair Jordan. Majek averred that the Board only began collecting the facsimile numbers based upon the recommendation of the Task Force in 2002 and "for no other reason." Jordan averred concerning the role nurses play in emergencies, both at the local and state level.

The attorney general counters, among its arguments, that "emergency response provider" refers to emergency types of entities, not individuals such as the nurses here. The attorney general contends that the Board's sole cause for possession of the business facsimile numbers is the nurses' licensee status and that the statute does not support an interpretation that makes individual nurses "emergency response provider[s]" based upon their licensee status with the Board. The attorney general relies upon the plain meaning of the language in the statute, the statistical information in the chart that the Board prepared showing practice areas of Texas nurses, including non-emergency types of practice areas, and the Board's agreement that it is not an emergency response provider and that it does nothing with the business facsimile numbers once collected.

This appeal turns on the meaning of "emergency response provider" within the statute. *See id*. There are three references to "emergency response provider" in section 418.176(a). Subsection (1) refers to the "staffing requirements of an emergency response provider" and defines "emergency response provider" as including "a law enforcement agency, a fire-fighting agency, or an emergency services agency." *See* Tex. Gov't Code Ann. § 418.176(a)(1). The Board, a licensing

agency, concedes that it is not an "emergency response provider" within the term's meaning in section 418.176(a). *See* Tex. Gov't Code Ann. § 418.176(a).[4]

Further, the reference to "staffing requirements" in subsection (1) also supports that the legislature did not intend to include individuals, such as the licensed nurses here, but "emergency response" types of entities within the meaning of "emergency response providers." *See id.* § 418.176(a)(1); *Needham*, 82 S.W.3d at 318. Individual nurses would not commonly have "staffing requirements" in contrast to the entities that employ individual nurses. *See* Tex. Gov't Code Ann. § 418.176(a)(1). The evidence was undisputed that the Board does not employ its licensed nurses or provide emergency services.

The other two references to "provider" in section 418.176(a) are consistent that the legislature did not intend to include individuals, such as the nurses here, within the meaning of "emergency response provider." Subsection (2) refers to the "tactical plan of the provider" and subsection (3) refers to a "list or compilation of pager or telephone numbers . . . of the provider." *See id*. § 418.176(a)(2), (3); *Needham*, 82 S.W.3d at 318. Again, an individual nurse would not commonly maintain a "tactical plan" or "list or compilation of pager or telephone numbers" in

---

[4] That the Board does not fall within the meaning of "emergency response provider" is consistent with the rule of *ejusdem generis*. The rule of *ejusdem generis* "provides that when words of a general nature are used in connection with the designation of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation." *Hilco Elec. Coop. v. Midlothian Butane Gas Co.*, 111 S.W.3d 75, 81 (Tex. 2003). Under the rule of *ejusdem generis*, courts interpret a statute containing an illustrative list to include only items of the same kind or class as those expressly mentioned. *See Johnson v. Texas Dep't of Transp.*, 905 S.W.2d 394, 399 (Tex. App.—Austin 1995, no writ). Although the listed agencies are not exclusive, they are consistent with a legislative intent to address confidential information held by classes or types of entities that provide emergency services. *See* Tex. Gov't Code Ann. § 418.176(a)(1)(West 2005).

10

contrast with the entity that employs her. *See* Tex. Gov't Code Ann. § 418.176(a)(2), (3); *see also id*. § 311.011.

The Board relies upon section 418.171 of the government code to support its interpretation of section 418.176(a) that individual nurses were intended to fall within the definition of "emergency response provider." *See id*. § 418.171 (West 2005). Section 418.171 authorizes individuals licensed in other states to render aid in this state to meet an emergency or disaster:

> A person who holds a license, certificate, or other permit issued by a state or political subdivision of any state evidencing the meeting of qualifications for professional, mechanical, or other skills may render aid involving the skill in this state to meet an emergency or disaster. This state shall give due consideration to the license, certificate, or other permit.

*See id*. That out-of-state persons, including nurses who are licensed in another state, are authorized and do respond to emergencies in Texas does not support broadening the definition of "emergency response provider" in section 418.176(a) to include individual nurses based upon their licensee status with the Board. *See City of Garland*, 22 S.W.3d at 365 (exceptions are to be narrowly construed).

We conclude that the plain language of section 418.176(a) is clear that the legislature did not intend for the term "emergency response provider" to include wholesale the individual nurses licensed by the Board. *See Shumake*, 199 S.W.3d at 284; *City of Garland*, 22 S.W.3d at 365. Moreover, the attorney general's interpretation of section 418.176(a) that nurses licensed by the Board are not included within the meaning of "emergency response provider" is reasonable. *See Rainbow Group, Ltd. v. Texas Employment Comm'n*, 897 S.W.2d 946, 949 (Tex. App.—Austin 1995, writ denied) (reviewing court gives due consideration to attorney general decisions in

cases involving the Act). We, therefore, conclude as a matter of law that the business facsimile numbers of nurses collected and maintained by the Board are not excepted from disclosure pursuant to section 552.101 of the Act in conjunction with section 418.176(a) of the government code. *See* Tex. Gov't Code Ann. §§ 418.176(a), 552.101; *Shumake*, 199 S.W.3d at 284. We sustain the attorney general's first issue.[5]

Having sustained the attorney general's first issue, we need not reach his second issue that the Board was required to provide a copy of the requested information or a representative sample to the attorney general. *See* Tex. R. App. P. 47.1.

## CONCLUSION

Because we conclude that the Board failed to show as a matter of law that the business facsimile numbers of nurses collected and maintained by the Board are excepted from disclosure under the Act as a matter of law, we reverse the district court's judgment in favor of the Board and render judgment in the attorney general's favor that the business facsimile numbers are subject to disclosure under the Act.

---

[5] Because we have concluded that the plain language of section 418.176(a) does not support the Board's interpretation of "emergency response provider," we need not address the attorney general's additional arguments for reversing the district court's judgment, such as the legislative history of this section. *See* Tex. Gov't Code Ann. § 418.176(a) (West 2005); Tex. R. App. P. 47.1; *see also Mills v. Fletcher*, 229 S.W.3d 765, 769 (Tex. App.—San Antonio 2007, no. pet.) (given clear language used in statute, appellate court need not consider legislative history); *Welmaker v. Cuellar*, 37 S.W.3d 550, 552 n.6 (Tex. App.—Austin 2001, pet. denied) (same).

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Pemberton
   Concurring Opinion by Justice Pemberton

Reversed and Rendered

Filed: February 3, 2010

13