**Opinion filed May 7, 2009**



**In The**

# Eleventh Court of Appeals

_____

## No. 11-08-00271-CV

_____

**HOUSE OF YAHWEH, YISRAYL HAWKINS,
AND SHANDRA HAWKINS, Appellants**

**V.**

**MICHAEL WAYNE JOHNSON, JR., INDIVIDUALLY; AS NEXT FRIEND
OF ALANNAH JOHNSON AND LISA JOHNSON, MINORS; AND AS
REPRESENTATIVE OF THE ESTATE OF LISA JOHNSON, Appellee**

**On Appeal from the 259th District Court**

**Jones County, Texas**

**Trial Court Cause No. 21,576**

**O P I N I O N**

In this interlocutory appeal, appellants House of Yahweh, Yisrayl Hawkins, and Shandra Hawkins challenge the trial court's order denying their motion to dismiss that was filed pursuant to Section 74.351(b) of the Texas Medical Liability Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(9) (Vernon 2008) (permitting interlocutory appeals) and TEX. CIV. PRAC. & REM. CODE

ANN. ch. 74 (Vernon 2005 & Supp. 2008) (Texas Medical Liability Act). Because the trial court abused its discretion in denying appellants' motion for continuance of the hearing on their motion to dismiss, we reverse the trial court's order, and we remand for further proceedings consistent with this opinion.

*Introduction*

Appellee, Michael Wayne Johnson, individually; as next friend of Alannah Johnson and Lisa Johnson, minors; and as representative of the estate of Lisa Johnson, brought this wrongful death and survival action against appellants, House of Yahweh, Yisrayl Hawkins, and Shandra Hawkins, and two other defendants, Sherry Hawkins and Melody Boyd. Appellants contend that this cause is a "health care liability claim" that is governed by the Texas Medical Liability Act. They also contend that the trial court abused its discretion in denying their motion to dismiss because appellee failed to comply with the expert report requirements set forth in Section 74.351. Appellee contends that appellants had the burden to establish that they were "health care providers" as defined in the Medical Liability Act; that appellants failed to meet their burden; and that, therefore, the trial court did not abuse its discretion in denying appellants' motion to dismiss.

*Factual Background*

Lisa Johnson died on August 13, 2006, after developing complications during the birth of her child, also named Lisa. On February 15, 2008, appellee filed this suit. He made the following allegations, among others, in his original petition: that Lisa Johnson had been a religious member of House of Yahweh; that Yisrayl Hawkins was the founder, leader, and instructor of House of Yahweh and its guidelines and rules; that, pursuant to the teachings and beliefs of House of Yahweh, its members must use the services of midwives, who are also members of House of Yahweh, in connection with childbirths; that, on or about August 13, 2006, Lisa Johnson went into labor and sought treatment from defendants; that Shandra Hawkins, who was House of Yahweh's lead midwife, and Sherry Hawkins and Melody Boyd, who were also midwives, treated Lisa Johnson; that, immediately after giving birth, Lisa Johnson began to experience medical complications and severe bleeding; that defendants refused to provide Lisa Johnson with further treatment and prevented the use of any outside medical treatment; that defendants deviated from the applicable

2

standard of care in the care and treatment of Lisa Johnson; and that Lisa Johnson died as a result of the defendants' negligence and gross negligence.

Appellee also alleged that "[d]efendants' techniques, procedures and medical judgment fell below the standard of care owed by [d]efendants and to be expected by their patients, including [Lisa Johnson]." He alleged that House of Yahweh "failed to use the standard of care that a reasonably prudent medical provider would have under the same or similar circumstances" and "deviated from the applicable standard of care by failing to institute a policy which would have prevented the negligent conduct alleged herein and by prohibiting and preventing the intervention of outside, lifesaving medical treatment." He also alleged that Yisrayl Hawkins undertook a duty "to ensure that the medical services available and which [House of Yahweh's] members were required to use did not deviate from the acceptable standard of care." He further alleged that Shandra Hawkins, Sherry Hawkins, and Melody Boyd "failed to use the standard of care that a reasonably prudent midwife would have [used] under the same or similar circumstances" and that their actions "deviated from the acceptable standard of care of medical professionals under the same or similar circumstances."

On June 16, 2008, appellee filed the expert report of Charles Anderson, M.D. In the report, Dr. Anderson stated that he had been board certified in Obstetrics and Gynecology since 1987. Dr. Anderson also made the following statements, among others, in his report: (1) that the standard of care had been breached in this case; (2) that "[t]he midwife delivering this baby did not deliver the placenta, which allowed the uterus to continue to bleed resulting in massive blood loss and death of this patient"; (3) that "[i]t is common practice to deliver the placenta manually, if it does not deliver spontaneously"; (4) that, "[o]n autopsy, the placenta was still present with the umbilical cord in the uterus"; (5) that "[i]t was partially separated, leading to massive blood loss and death of Lisa Johnson"; (6) that "[t]he medical care providers . . . fell far below the standard of care by not removing the placenta"; (7) that "[t]he medical providers failed to deliver the placenta and failed to treat the resulting uterine atony and blood loss[, which] directly led to the death of Lisa Johnson"; and (8) that "[t]he placenta should have been manually removed and patient transported to a hospital."

On July 11, 2008, appellants filed their motion to dismiss. In the motion, appellants contended that "[t]his is a health care liability claim" governed by Chapter 74. Appellants also

3

contended that Dr. Anderson's report failed to comply with the requirements of Section 74.351 and did not constitute a good faith effort to comply with the requirements. Therefore, appellants moved the trial court to dismiss appellee's claims against them.

The trial court scheduled appellants' motion to dismiss for hearing on September 12, 2008. On the morning of the hearing, appellee filed his first amended original petition and a response to appellants' motion to dismiss. Unlike the allegations in his original petition, appellee did not use phrases such as "medical judgment," "patients," "reasonably prudent medical provider," "medical services," and "medical professionals" in the allegations in his amended petition. For example, appellee alleged in his original petition that House of Yahweh "failed to use the standard of care that a reasonably prudent medical provider would have [used] under the same or similar circumstances." However, in his amended petition, he alleged that House of Yahweh "failed to use the standard of care that a reasonably prudent entity would have under the same or similar circumstances." Appellee contended in his response to appellants' motion to dismiss that this suit is not a health care liability claim. He also contended that, in order for appellants to establish that Chapter 74 applied to his claims against them, they had the burden to bring forth evidence establishing that they met the statutory definition of "physician," "health care provider," or "health care institution."

The trial court proceeded with the hearing on September 12, 2008. The following exchange took place at the beginning of the hearing:

> [APPELLANTS' COUNSEL]: Thank you, Your Honor. The first comment I would like to make is just simply that just this morning before this hearing started about 20 or 30 minutes ago, I received Plaintiff's First Amended Original Petition as well as Plaintiff's response to our objections and motion to dismiss, and, quite honestly, I'm a little frustrated by the fact that I'm just receiving this today being that this hearing was set over two months ago and we filed our brief and motion on July 11th.
>
> THE COURT: Hold on.
>
> Did you provide a copy to the Court, [Appellee's Counsel]?
>
> [APPELLEE'S COUNSEL]: Your Honor, I have not. But I do have an extra for the Court if you'd like it, Your Honor.
>
> THE COURT: All right. Did you file that with the clerk this morning?

4

[APPELLEE'S COUNSEL]: I did, Your Honor, and they're both file stamped at 8:40 this morning.

Appellee's counsel provided the trial court a copy of appellee's response to the motion to dismiss, and then the following exchange took place:

[APPELLANTS' COUNSEL]: Thank you. Your Honor, after having a chance to briefly review their amended petition it does somewhat impact and affect my arguments today. They have changed the language in their petition I believe as a result of my brief, and my initial inclination is to request that we have a continuance of this hearing so that I have an opportunity to respond and draft an additional brief – an amended brief in response to the amended – amendments they have made to their petition.

THE COURT: Specifically what about the new language is going to prevent you from being able to argue today?

[APPELLANTS' COUNSEL]: They have changed language and removed language related to words such as "medical professionals[,]" "health care[,]" "medical provider" "reasonably prudent medical standard."

THE COURT: And how does that affect your argument on your motion to dismiss?

[APPELLANTS' COUNSEL]: Well, part of my argument, Your Honor, is that, which I thought was evident based on their pleadings, that is a medical liability claim, which is governed by Chapter 74 or the Texas Civil Practice and Remedies Code. However, after having a moment this morning to briefly review their response to my motion, it seems to be that their primary argument is that this is not a medical liability claim and that they have thus amended their petition in order to fit into – better fit into what they believe would be a nonhealth care liability claim.

[APPELLEE'S COUNSEL]: May I respond to that, Your Honor?

THE COURT: Yes.

[APPELLEE'S COUNSEL]: Your Honor, it's well established in the case law particularly the progeny cases that followed Diversicare versus Rubio[1] talking about pleadings don't matter. It's a matter that's based on facts. The facts of the underlying case. The reality of what's going on here is that they're not ready today.

---

[1] *See Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842 (Tex. 2005).

5

I've cited for the case – the Court in Tab No. 5 – Brown versus Villegas.[2] It talks about their burden in coming forth with some evidence today that they are health care providers. They asked me for a copy of that case before this hearing got started. I provided them a copy. I assume they are in agreement with that copy that they don't have any evidence of care health providers to provide to the Court today and now they're requesting a continuance. That's the true motives behind this. I'm ready to proceed, Your Honor. And I would respectfully request that the Court deny their request for a continuance of this matter.

[APPELLANTS' COUNSEL]: Your Honor, I guess my only response would be, if pleadings don't matter I don't quite understand why they amended their petition to alter the language.

THE COURT: All right. Give me one second please.

(Brief pause.)

THE COURT: All right. The oral motion for continuance is denied, and we will proceed forward on the motion as it is presented to the Court.

Following arguments from counsel, the trial court denied appellants' motion to dismiss. On October 14, 2008, the trial court entered a written order denying the motion. The trial court made the following findings in its order:

(1) The Defendant's oral Motion for Continuance made by House of Yahweh, Yisrayl Hawkins and Shandra Hawkins after the Court called this matter for hearing is DENIED.

(2) The record in this case contains no evidence that House of Yahweh, Yisrayl Hawkins or Shandra Hawkins are "duly licensed, certified, registered or chartered by the State of Texas to provide health care." Without such evidence, the Court cannot determine whether House of Yahweh, Yisrayl Hawkins or Shandra Hawkins are health care providers so as to determine that Tex. Civ. Prac. & Rem. Code Chapter 74 applies to Plaintiff's claims against them.

(3) While the record in this matter does not contain such evidence, if House of Yahweh, Yisrayl Hawkins or Shandra Hawkins were health care providers, the Court finds that the report of Charles Anderson, M.D. served by Plaintiff upon Defendants 118 days after Plaintiff's Original Petition was filed, represents an

---

[2]*See Brown v. Villegas*, 202 S.W.3d 803 (Tex. App.—San Antonio 2006, no pet.).

objective good faith effort to comply with the definition of "expert report" as defined by Tex. Civ. Prac. & Rem. Code § 74.351(r)(6).

(4) If any appellate court reviewing this matter determines for whatever reason that the report of Charles Anderson, M.D. does not represent an objective good faith effort to comply with the definition of "expert report" as defined by Tex. Civ. Prac. & Rem. Code § 74.351(r)(6), this Court grants Plaintiff's alternative request under Tex. Civ. Prac. & Rem. Code § 74.351(c), for a thirty (30) day extension to cure any deficiency.

*Issues on Appeal*

Appellants present four issues for review. In their first issue, they contend that the trial court erred in concluding that there was no evidence that they were health care providers because appellee's allegations in his pleadings constituted judicial admissions of their status as health care providers. In their second issue, they contend that the trial court erred in concluding that appellee was not required to file an expert report with respect to his claims against House of Yahweh and Yisrayl Hawkins because appellee sought to hold them vicariously liable for the alleged negligent conduct of the midwives, who were health care providers. In their third issue, they assert that the trial court erred in denying their motion to dismiss because Dr. Anderson's report failed to comply with the requirements for an expert report. In their fourth issue, they assert that the trial court erred in denying their motion for continuance.

*Health Care Liability Claims*

Chapter 74 of the Texas Civil Practice and Remedies Code governs health care liability claims. Chapter 74 defines a health care liability claim as follows:

"Health care liability claim" means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

Section 74.001(a)(13). A "health care provider" is "any person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care, including: (i) a registered nurse; (ii) a dentist; (iii) a podiatrist;

7

(iv) a pharmacist; (v) a chiropractor; (vi) an optometrist; or (vii) a health care institution." Section 74.001(a)(12)(A); *see also* Section 74.001(a)(11) (definition of "health care institution"). The use of the word "including" makes the provider list in Section 74.001(a)(12)(A) nonexclusive; the word "including" is a term of enlargement and not of limitation or exclusive enumeration. *Christus Health v. Beal*, 240 S.W.3d 282, 286 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Pro Path Servs., L.L.P. v. Koch*, 192 S.W.3d 667, 671 (Tex. App.—Dallas 2006, pet. denied); *see* TEX. GOV'T CODE ANN. § 311.005(13) (Vernon 2005). In addition, the term "health care provider" also includes: "(i) an officer, director, shareholder, member, partner, manager, owner, or affiliate of a health care provider or physician; and (ii) an employee, independent contractor, or agent of a health care provider or physician acting in the course and scope of the employment or contractual relationship." Section 74.001(a)(12)(B). "Health care" is "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." Section 74.001(a)(10).

Title 3 of the Texas Occupations Code contains provisions applying to health professions. *See* TEX. OCC. CODE ANN. §§ 101.001-112.051 (Vernon 2004 & Supp. 2008). Subtitle C of Title 3 is entitled "Other Professions Performing Medical Procedures." Chapter 203 of subtitle C regulates midwives, and it is entitled the "Texas Midwifery Act." TEX. OCC. CODE ANN. §§ 203.001-.505 (Vernon 2004 & Supp. 2008). The Midwifery Act defines a "midwife" as "a person who practices midwifery and has met the licensing requirements established by this chapter and midwifery board rules." Section 203.002(6). "Midwifery" is "the practice of: (A) providing the necessary supervision, care, and advice to a woman during normal pregnancy, labor, and the postpartum period; (B) conducting a normal delivery of a child; and (C) providing normal newborn care." Section 203.002(7). The Act defines "normal" as "circumstances under which a midwife has determined that a client is at a low risk of developing complications." Section 203.002(9). "A person may not practice midwifery unless the person holds a license issued under this chapter." Section 203.251.

Under Section 74.001(a)(12)(A), the term "health care provider" includes "any person...duly licensed, certified, registered, or chartered by the State of Texas to provide health care." The State

of Texas recognizes "midwifery" as a health profession. Based on the above definition of "midwifery," midwives perform and furnish "health care" as that term is defined in Chapter 74 of the Civil Practice and Remedies Code. Therefore, if a person performing midwifery is "duly licensed" as a midwife, the person would fall within the definition of "health care provider" in Chapter 74, and Chapter 74 would govern a claimant's claims against the person.

*Trial Court's Denial of Motion for Continuance*

We review a trial court's denial of a motion for continuance under an abuse of discretion standard. *BMC Software, Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002). A trial court abuses its discretion when it acts in an arbitrary and unreasonable manner. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

The trial court stated that it could not determine whether appellants were health care providers because there was no evidence that they were "duly licensed, certified, registered or chartered by the State of Texas to provide health care." In their first issue, appellants contend that appellee's allegations constituted judicial admissions of their status as health care providers. A judicial admission must be a clear, deliberate, and unequivocal statement. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex. 2000). A judicial admission occurs when an assertion of fact is conclusively established in live pleadings. *Id.*

In many health care liability cases, a party's status as a health care provider can be determined from the plaintiff's allegations. Chapter 74 provides that a party asserting a health care liability claim must give written notice of the claim "to each physician or health care provider against whom such claim is being made at least 60 days before the filing of a suit" and must plead that he or she complied with the notice requirement. Section 74.051. A plaintiff's pleadings that he or she has complied with the notice requirement of Chapter 74 or that a defendant is a health care provider may constitute a judicial admission that the opposing party is a health care provider. *See Auld*, 34 S.W.3d at 904-05.

In this case, appellee did not provide written notice of his claims to appellants or the other defendants before filing suit, and appellee did not allege that he had complied with the notice provision in Chapter 74. Appellee also did not allege that he was asserting a "health care liability claim" against appellants or that appellants were "health care providers." In the absence of such

9

allegations, appellee's allegations do not contain clear, deliberate, and unequivocal statements of appellants' status as health care providers and, therefore, do not constitute judicial admissions of that status. *Auld*, 34 S.W.3d at 905. We overrule appellants' first issue.

Although appellee's allegations did not rise to the level of judicial admissions of appellants' status as health care providers, appellee alleged claims in the nature of health care liability claims against appellants. Appellee's primary allegations relate to alleged care and treatment, and lack thereof provided by the midwives to Lisa Johnson. The midwives' care and treatment of Lisa Johnson fell within the definition of "health care" under Chapter 74. In his original petition, appellee alleged that House of Yahweh failed to comply with the standard of care owed by a "reasonably prudent medical provider" and that "[d]efendants' techniques, procedures and medical judgment fell below the standard of care." Based on appellee's allegations in his original petition and the fact that appellee filed Dr. Anderson's expert report, it was reasonable for appellants to conclude that appellee was asserting health care liability claims against them.

Appellants filed their motion to dismiss on July 11, 2008. Appellee had about two months notice of the motion before the September 12, 2008 hearing. Based on appellants' motion, appellee knew that appellants contended he was asserting health care liability claims against them. However, appellee did not file a response to the motion until the morning of the hearing. In the motion, appellee asserted that his claims against appellants were not health care liability claims and that appellants had an evidentiary burden of establishing their status as health care providers. The record does not show that appellee made these positions known to appellants before the morning of the hearing. Appellee also filed his amended petition on the morning of the hearing. He removed medical terminology from the allegations in his amended petition. The trial court agreed with appellee's position that appellants had an evidentiary burden of establishing their status as health care providers and concluded that appellants had failed to meet their burden. The timing of appellee's response to appellants' motion to dismiss prevented appellants from being able to present evidence in response to appellee's assertions.

Under the circumstances in this case, we hold that the trial court abused its discretion in denying appellants' motion to continue the hearing on their motion to dismiss. We sustain appellants' fourth issue. The new hearing will provide appellants an opportunity to present evidence

10

on the issue of whether they are health care providers.  Based on our ruling on appellants' fourth issue, we need not address appellants' second and third issues.  TEX. R. APP. P. 47.1.  Therefore, we do not address whether Dr. Anderson's report complied with the requirements of Section 74.351.

*This Court's Ruling*

We reverse the trial court's order denying appellants' motion to dismiss, and we remand this cause to the trial court for further proceedings consistent with this opinion.


TERRY McCALL

JUSTICE


May 7, 2009

Panel consists of:  Wright, C.J.,
McCall, J., and Strange, J.