**FORT BEND COUNTY TOLL ROAD AUTHORITY, Appellant**

v.

**Zuleima OLIVARES, Individually and as the Representative of the Estate of Pedro Olivares, Jr., and Pedro Olivares, Individually, Appellees.**

**No. 14–09–00161–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

June 15, 2010.

---

Patricia L. Hayden, John J. Hightower, Houston, for appellee.

Michael Scott Beckelman, Rick Molina, Frank E. Sanders, Houston, Randall W. Morse, Richmond, Richard Alan Mason, Austin, for appellees.

Panel consists of Chief Justice HEDGES, Justice SEYMORE, and Senior Justice HUDSON.*

## OPINION

CHARLES W. SEYMORE, Justice.

Fort Bend County Toll Road Authority ("FBCTRA") presents this accelerated appeal from the trial court's denial of its plea to the jurisdiction. In its plea, FBCTRA challenged the trial court's subject-matter jurisdiction over claims brought by Zuleima Olivares, individually and as representative of the estate of Pedro Olivares, Jr., and Pedro Olivares (collectively, "appellees").

FBCTRA argues the trial court erred in denying its plea because appellees have not stated claims for which FBCTRA's governmental immunity is waived. In a separate appeal, Texas Department of Transportation ("TxDOT"), FBCTRA's co-defendant in the underlying lawsuit, also challenges the trial court's denial of its plea to the jurisdiction. For reasons outlined below, we reverse and remand in part and reverse and render in part.

## I. BACKGROUND

On January 1, 2007, Pedro Olivares, Jr. and his wife were traveling westbound on the Westpark Tollway ("Tollway") near Dairy Ashford Road in Harris County when they were struck by a vehicle driven by Michael Ladson. According to appellees, Ladson was traveling on the Tollway in the wrong direction after entering the westbound lanes near Gaston Road in Fort Bend County, approximately eight and one-half miles from the accident scene. Gaston Road intersects with FM 1093, a state road controlled by TxDOT, which merges into the Tollway. Pedro Olivares, Jr. sustained severe bodily injuries resulting in death.

In their second amended petition, appellees assert claims against FBCTRA, Fort Bend County, Harris County, Harris County Toll Road Authority ("HCTRA"), TxDOT, Brown and Gay Engineers, Inc., and Michael Stone Enterprises, Inc. The Estate of Michael Ladson has been designated as a responsible third party. Appellees allege FBCTRA is liable for certain premise defects and negligent acts or omissions involving the intersection at FM 1093–Gaston Road and the Tollway. Ap-

* Senior Justice J. Harvey Hudson sitting by    assignment.

pellees also contend FBCTRA is liable under a joint enterprise theory.

FBCTRA filed a plea to the jurisdiction. Appellees then filed their first amended petition and a response to FBCTRA's plea. Subsequently, FBCTRA filed a supplemental plea. Following the hearing on FBCTRA's plea, appellees filed their second amended petition and a supplemental response to FBCTRA's plea. FBCTRA then filed a second supplement to its plea. On January 28, 2009, the trial court signed an order denying FBCTRA's plea. FBCTRA now appeals the trial court's denial of its plea to the jurisdiction.

## II. INTERLOCUTORY APPEAL AND STANDARD OF REVIEW

We have statutorily-conferred authority to review the trial court's interlocutory order denying FBCTRA's plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(8) (Vernon 2008) (A party may appeal an interlocutory order that "grants or denies a plea to the jurisdiction by a governmental unit. . . ."). Appellate courts strictly construe statutes authorizing interlocutory appeals. *See State v. Fiesta Mart, Inc.*, 233 S.W.3d 50, 54 (Tex.App.-Houston [14th Dist.] 2007, pet. denied). Subsection 51.014(a)(8) authorizes an appeal only when the trial court grants or denies a plea to the juris-

diction. An appellate court must consider challenges to the trial court's subject-matter jurisdiction on interlocutory appeal, regardless of whether such challenges were presented to or determined by the trial court. *See Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 850–51 (Tex.2000).[1]

We review the trial court's ruling on a plea to the jurisdiction *de novo*. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex.2004). In a plea to the jurisdiction, a party may challenge either the pleadings or existence of jurisdictional facts. *Id.* at 226–27; *see also* Rebecca Simmons & Suzette Kinder Patton, *Plea to the Jurisdiction: Defining the Undefined*, 40 St. Mary's L.J. 627, 651–52 (2009).

When a defendant challenges the plaintiff's pleadings, the court's determination turns on whether the pleader has alleged facts sufficient to demonstrate subject-matter jurisdiction. *Miranda*, 133 S.W.3d at 226. To make this determination, courts should glean the pleader's intent and construe the pleadings liberally in favor of jurisdiction. *Id.* If the pleadings do not contain facts sufficient to affirmatively demonstrate the trial court's jurisdiction, but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and plaintiffs should be afforded an opportuni-

---

1. In previous panel decisions from this court, we expressed that an appellate court does not have jurisdiction on interlocutory appeal to address grounds not asserted in the underlying plea to the jurisdiction. *See Galveston Indep. Sch. Dist. v. Jaco*, 278 S.W.3d 477, 479 n. 2 (Tex.App.-Houston [14th Dist.] 2009), *rev'd on other grounds*, 303 S.W.3d 699 (per curiam); *State v. Clear Channel Outdoor, Inc.*, No. 14–07–00369–CV, 2008 WL 2986392, at *3 (Tex.App.-Houston [14th Dist.] July 31, 2008, no pet.); *Clear Lake City Water Auth. v. Friendswood Dev. Co.*, 256 S.W.3d 735, 747 n. 14 (Tex.App.-Houston [14th Dist.] 2008, pet. dism'd); *Prairie View A & M Univ. v. Dickens*,

243 S.W.3d 732, 736 (Tex.App.-Houston [14th Dist.] 2007, no pet.); *Brenham Hous. Auth. v. Davies*, 158 S.W.3d 53, 61 (Tex.App.-Houston [14th Dist.] 2005, no pet.).

We are not bound by these opinions because the *Gibson* decision is directly on point. *See Chase Home Fin., L.L.C. v. Cal W. Reconveyance Corp.*, 309 S.W.3d 619, 630 (Tex.App.-Houston [14th Dist.] 2010, no pet. h.) ("[A]bsent a decision from a higher court or this court sitting en banc that is on point and contrary to the prior panel decision . . ., this court is bound by the prior holding of another panel of this court.").

ty to amend. *Id.* at 226–27. If the pleadings affirmatively negate jurisdiction, a plea may be granted without allowing plaintiffs an opportunity to amend. *Id.* at 227. The opportunity to amend pleadings that are insufficient to establish, but do not affirmatively negate, jurisdiction arises after a court determines the pleadings are insufficient. *White v. Robinson,* 260 S.W.3d 463, 475–76 (Tex.App.-Houston [14th Dist.] 2008, pet. granted) (citing *Tex. A & M Univ. Sys. v. Koseoglu,* 233 S.W.3d 835, 839–40 (Tex.2007)).

When a defendant challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties. *Miranda,* 133 S.W.3d at 227. We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts arising from such evidence in the nonmovant's favor. *Id.* at 228. If the relevant evidence is undisputed or a fact question is not raised relative to the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* If the evidence creates a fact question regarding the jurisdictional issue, the trial court cannot grant the plea, and the fact issue will be resolved by the fact finder. *Id.* at 227–28.

When resolution of an issue requires interpretation of a statute, we review under a de novo standard. *Mokkala v. Mead,* 178 S.W.3d 66, 70 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). In construing a statute, our objective is to determine and give effect to the legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000). If possible, we must ascertain that intent from the language the legislature selected and should not refer to extraneous matters for intent not expressed in the statute. *Id.* If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the

words. *St. Luke's Episcopal Hosp. v. Agbor,* 952 S.W.2d 503, 505 (Tex.1997).

## III. ANALYSIS

FBCTRA contends the trial court lacks jurisdiction over appellees' claims because they cannot demonstrate that FBCTRA's governmental immunity has been waived. Disposition of whether immunity has been waived is governed by the Texas Tort Claims Act ("TTCA"). *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 101.001–.109 (Vernon 2005 & Supp. 2009).

### A. Texas Tort Claims Act

Under our common law, sovereign or governmental immunity defeat a trial court's subject-matter jurisdiction. *See Harris County v. Sykes,* 136 S.W.3d 635, 638 (Tex.2004). The TTCA provides a limited waiver of immunity for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem.Code Ann. § 101.021 (Vernon 2005). For premise-defect claims, the governmental unit generally "owes to the claimant only the duty that a private person owes to a licensee," unless the claim involves special defects or "the duty to warn of the absence, condition, or malfunction of [traffic-control devices] as is required by Section 101.060." *Id.* § 101.022(a), (b) (Vernon 2005 & Supp. 2009).

■ However, there are certain exceptions to waiver of immunity under the TTCA. There is no waiver when a claim arises from

(1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or

(2) a governmental unit's decision not to perform an act or on its failure to make

a decision on the performance or non-performance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.

*Id.* § 101.056 (Vernon 2005). "In other words, the State remains immune from suits arising from its discretionary acts and omissions." *Tex. Dep't of Transp. v. Garza,* 70 S.W.3d 802, 806 (Tex.2002). Similarly, under subsection 101.060(a), the TTCA does not waive immunity as to claims arising from

> (1) the failure of a governmental unit initially to place a traffic or road sign, signal, or warning device if the failure is a result of discretionary action of the governmental unit;
>
> (2) the absence, condition, or malfunction of a traffic or road sign, signal, or warning device unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice[.]

Tex. Civ. Prac. & Rem.Code Ann. § 101.060(a)(1)(2) (Vernon 2005). "Under subsection (a)(1), the State retains immunity for discretionary sign-placement decisions." *State ex rel. State Dep't of Highways and Pub. Transp. v. Gonzalez,* 82 S.W.3d 322, 326–27 (Tex.2002). "Under subsection (a)(2), the State retains immunity as long as it corrects a sign's defective [condition, absence, or malfunction] within a reasonable time after notice." *Id.*

## B. Claims Based on Traffic–Control Devices

FBCTRA first challenges appellees' claims concerning placement, maintenance, and quality of traffic-control devices at or around the FM 1093–Gaston Road intersection. FBCTRA generally argues that these allegations involve exercise of discretion for which immunity is not waived under the TTCA.

## 1. Failure to Install Traffic–Control Devices

■ FBCTRA challenges for the first time on appeal appellees' allegation that it failed to install "non-discretionary" signs and devices after receiving "notice" that such signs and devices were necessary. FBCTRA argues these claims are barred because they pertain solely to discretionary acts. FBCTRA also challenges appellees' allegations that it designed but failed to install warning flashers and cameras intended to monitor traffic for safety.

In *City of Grapevine v. Sipes,* the Texas Supreme Court considered whether a city's failure to install a traffic signal, after deciding to do so, fell under the portion of subsection 101.060(a)(2) allowing claims to be brought under the TTCA when the absence of a traffic-control device is not remedied within a reasonable time after notice. 195 S.W.3d 689, 692–95 (Tex.2006). Construing subsection 101.060(a)(2) in light of subsection 101.060(a)(1), the court concluded that timing of implementation is discretionary:

> *When* the City first installs a traffic signal is no less discretionary than *whether* to install it. The timing of implementation could be affected by the governmental unit's balancing of funding priorities, scheduling, traffic patterns, or other matters; to impose liability for the failure to timely implement a discretionary decision could penalize a governmental unit for engaging in prudent planning and paralyze it from making safety-related decisions. This sort of planning and execution is precisely the type of discretionary act for which the TTCA retains immunity. Thus, when subsections (a)(1) and (a)(2) are read together, (a)(2) logically applies only to those traffic signals that have already been installed.

*Id.* at 694. Therefore, FBCTRA retained discretion regarding *when* to install the warning flashers. Although section 101.060 applies only to signs, signals, and warning devices, this rationale likewise applies to FBCTRA's decision regarding when to install the planned traffic-monitoring cameras because a governmental unit's plans regarding the safety features of a roadway are discretionary. *See State v. San Miguel,* 2 S.W.3d 249, 251 (Tex.1999) (per curiam) (interpreting section 101.056).

■ In their pleadings, appellees do not specify the reason or reasons *why* FBCTRA failed to install these devices. Consequently, appellees' pleadings do not affirmatively demonstrate the trial court's jurisdiction over these claims. However, the allegations under consideration do not affirmatively demonstrate incurable defects in the court's jurisdiction. Specifically, it is unclear whether FBCTRA's conduct involved negligent implementation of a discretionary policy decision[2] (e.g., construction workers negligently overlooked that construction plans ordered installation of the devices on a certain date), for which immunity is waived under the TTCA, or a discretionary policy decision (e.g., a decision to postpone installation or the failure to set an installation date), for which immunity is not waived. We also cannot discern whether appellees are alleging that the absence of these items caused a prem- ise defect or simply failed to warn of an existing defect or make it reasonably safe.[3] A plaintiff is entitled to an opportunity to amend if additional facts can overcome the governmental entity's immunity from suit. *See Miranda,* 133 S.W.3d at 226–27; *Koseoglu,* 233 S.W.3d at 840. Accordingly, we reverse the trial court's denial of FBCTRA's plea and remand for the trial court to allow appellees a reasonable opportunity to amend their pleadings. *See Miranda,* 133 S.W.3d at 226–27; *see also Koseoglu,* 233 S.W.3d at 839–40.

Finally, appellees' petition does not affirmatively demonstrate the trial court's jurisdiction over their claim that FBCTRA failed to install "non-discretionary" signs and devices after receiving notice such signs and devices were necessary. Appellees have not alleged facts and circumstances rendering installation of the signs and devices "non-discretionary."[4] Although we construe pleadings liberally in favor of jurisdiction, we refuse to allow appellees to avoid the general rule that traffic-control device placement is a discretionary governmental function by merely describing the act or omission to be "non-discretionary." Therefore, we reverse the trial court's order relative to this claim and remand for further proceedings after the trial court allows a reasonable opportunity for appellees to amend their pleadings.

---

2. "Negligent implementation" within the context of a claim under the TTCA is discussed in greater depth *infra.*

3. To the extent appellees allege that the lack of traffic-monitoring cameras caused a dangerous condition because there were no people monitoring the roadway, they fail to allege a premise-defect claim under the TTCA. Such a "condition" concerns the activity of people, not the condition of the roadway itself. *See Tex. Parks & Wildlife Dep't v. Garrett Place, Inc.,* 972 S.W.2d 140, 144 (Tex.App.-Dallas 1998, no pet.).

4. To the extent appellees allege the signs were "non-discretionary" because they were required by the Texas Manual on Uniform Traffic Control Devices ("MUTCD"), appellees' allegation that TxDOT "retained the right to supervise and inspect all signs, barricades, and traffic control plans to insure compliance with the [MUTCD]" is not an allegation that FBCTRA was required to select and place signs exactly as specified in the MUTCD. Compliance with the MUTCD's provisions is generally not mandatory. *See Brazoria County v. Van Gelder,* 304 S.W.3d 447, 454 (Tex. App.-Houston [14th Dist.] 2009, pet. denied).

*See Miranda,* 133 S.W.3d at 226–27; *see also Koseoglu,* 233 S.W.3d at 839–40.

## 2. Traffic–Control Device Deficiencies

■ FBCTRA also contends its immunity is not waived relative to appellees' claims based on certain traffic-control devices that "allow" motorists to travel in the wrong direction. In their petition, appellees allege the Tollway/FM 1093 area near Gaston Road has confusing or misleading signs, signals, and warning devices, inadequate barricades, and insufficient traffic control. As a subset of this claim, appellees allege FBCTRA negligently placed warning signs on the wrong side of the road at or near the intersection. Appellees allege these deficiencies constitute negligent implementation of FBCTRA's policy to operate FM 1093 and the Tollway safely. Appellees also argue that placement of warning signs on the wrong side of the road resulted in a condition under subsection 101.060(a)(2).

It is well established that a governmental unit is not immune from liability for an injury caused by a premise defect that was created through negligent implementation of policy. *See Mogayzel v. Tex. Dep't of Transp.,* 66 S.W.3d 459, 465–66 (Tex.App.-Fort Worth 2001, pet. denied). A governmental unit's negligence in implementing a formulated policy, such as negligently constructing a designed gabion wall, is not a discretionary function. *See Mitchell v. City of Dallas,* 855 S.W.2d 741, 745 (Tex. App.-Dallas 1993), *aff'd,* 870 S.W.2d 21 (Tex.1994). "[S]overeign immunity is preserved for the negligent discretionary formulation of policy, but not for the negligent implementation of the policy at the [operational/ministerial] level." *Guadalupe–Blanco River Auth. v. Pitonyak,* 84 S.W.3d 326, 342 (Tex.App.-Corpus Christi 2002, no pet.). Further, a governmental unit does not relinquish its discretion relative to roadway design by implementing a general policy to operate roads safely. *See Tarrant County Water Control & Improvement Dist. No. 1 v. Crossland,* 781 S.W.2d 427, 433 (Tex.App.-Fort Worth 1989, writ denied) (holding State's alleged policy to "warn of danger" did "not make the State liable for all possible failures to warn. The State may still make specific policy decisions about the design of State projects ....."), *overruled on other grounds by City of Dallas v. Mitchell,* 870 S.W.2d 21, 23 (Tex.1994). In other words, a general policy to build safe roads does not expose a governmental unit to liability for every conceivable safety deficiency under a negligent implementation of policy theory of recovery.

■ A "condition" under subsection 101.060(a)(2) is defined as "something 'wrong' with the traffic sign or signal such that it would require correction by the State after notice." *Garza,* 70 S.W.3d at 807; *see also Sparkman v. Maxwell,* 519 S.W.2d 852, 858 (Tex.1975) (defining "condition" as "either an intentional or an inadvertent state of being"). The term also "refers to the maintenance of a sign or signal in a condition sufficient to properly perform the function of traffic control for which it is relied upon by the traveling public." *Lawson v. McDonald's Estate,* 524 S.W.2d 351, 356 (Tex.Civ.App.-Waco 1975, writ ref'd n.r.e.). "[I]n the cases in which [the supreme court] has interpreted 'condition' in the context of road signs and signals, [it has] found a waiver of immunity only in those situations in which the sign or signal was either (1) unable to convey the intended traffic control information, or (2) conveyed traffic control information other than what was intended." *Garza,* 70 S.W.3d at 807; *see also Gonzalez,* 82 S.W.3d at 327 ("[S]ubsection [101.060](a)(2) requires the State to maintain traffic signs

in a condition sufficient to perform their intended traffic-control function.").

Appellees' contention that confusing and misleading signs, signals, and warning devices, inadequate barricades, and insufficient traffic control "allow" drivers to enter the Tollway in the wrong direction implicates the adequacy of devices chosen by FBCTRA, a discretionary design decision for which immunity is not waived. *See San Miguel,* 2 S.W.3d at 251 ("A court should not second-guess a governmental unit's decision about the type of marker or safety device that is most appropriate."); *Tex. Dept. of Transp. v. Bederka,* 36 S.W.3d 266, 271 (Tex.App.-Beaumont 2001, no pet.) ("Department enjoys immunity from suit regarding its decision to place a particular traffic control signal, even if the signal fails to make the premises safe. The selection of the device employed is not its condition."), *overruled on other grounds by Sipes,* 195 S.W.3d 689.

Next, appellees' allegation that warning signs were negligently placed on the wrong side of the road implicates FBCTRA's decision relative to the location of the signs, another discretionary decision. *See Gonzalez,* 82 S.W.3d at 326–27 (explaining that State retains immunity for its decision relative to "where" signs should be located); *Johnson v. Tex. Dep't of Transp.,* 905 S.W.2d 394, 398 (Tex.App.-Austin 1995, no writ) (holding that location of where to place sign is a discretionary design decision). Appellees allege "[t]his negligent placement caused a failure to [warn] motorist[s] that they may be going in the wrong direction." They argue that

FBCTRA failed to maintain the signs "in a condition sufficient to properly perform the function of traffic control for which [they are] relied upon by the traveling public" because the signs were on the wrong side of the road. *City of Midland v. Sullivan,* 33 S.W.3d 1, 12 (Tex.App.-El Paso 2000, pet. dism'd w.o.j.). Apparently, appellees contend that location of the warning signs was a "condition" of signs under subsection 101.060(a)(2) which prevented or hindered the signs from being seen by motorists.[5]

A "condition" under subsection 101.060(a)(2) has been held to arise when a sign is "unable to convey the intended traffic control information." *Garza,* 70 S.W.3d at 807 (citing *Lorig v. City of Mission,* 629 S.W.2d 699, 701 (Tex.1982) (holding that a "stop sign's obstruction from view by trees or branches is a 'condition' of that sign...")). Appellees, however, allege that the signs failed to warn motorists because of the *location* of the signs. Appellees do not cite any authority supporting their contention that location of a sign as chosen by a governmental entity amounts to a wrongful "condition" of the sign pursuant to subsection 101.060(a)(2), and we decline to so broaden the meaning of "condition." *See Johnson,* 905 S.W.2d at 398 ("If a motorist's claim that a sign is difficult to see were sufficient to call into question ... design discretion, virtually any challenge to the placement of a traffic sign would suffice to preclude summary judgment on sovereign immunity grounds and subject the ... engineering design in this limited area to a jury's review....").[6]

---

5. To the extent appellees allege the signs were placed on the wrong side of the road because their location did not comply with the MUTCD, appellees' allegation that "[TxDOT] retained the right to supervise and inspect all signs, barricades, and traffic control plans to insure compliance with the [MUTCD]" is not an allegation that FBCTRA was required to

select and place signs exactly as specified in the MUTCD. Compliance with the MUTCD's provisions is generally not mandatory. *See Van Gelder,* 304 S.W.3d at 454.

6. We note that in *Sparkman,* the supreme court held that a red left-turn arrow which was installed and operated as designed and

"[W]hen traffic engineers decide where to place warning signs around a detour, the State retains its immunity." *Gonzalez*, 82 S.W.3d at 326–27.

We also reject appellees' argument that FBCTRA failed to maintain the signs in a condition sufficient to perform their intended function. "[M]aintenance involves preservation of a highway *as it was designed and constructed.*" *Siders v. State*, 970 S.W.2d 189, 193 (Tex.App.-Dallas 1998, pet. denied) (emphasis added). If the signs were located as designed, FBCTRA did not fail to maintain the signs by failing to relocate them.

Appellees argue FBCTRA did not exercise discretion in installing the subject traffic-control devices because defendant Brown & Gay Engineers, Inc. drafted construction plans for the intersection which FBCTRA simply implemented. Appellees do not cite any authority for the proposition that a governmental entity loses its discretion relative to design of a roadway when it constructs the roadway pursuant to an outside engineer's design. In such a situation, the governmental entity necessarily exercises its discretion to approve and adopt the design when it constructs the roadway pursuant to the design.

Therefore, appellees' argument is unpersuasive.

Finally, appellees cannot avoid the discretionary-function exception to waiver of immunity by claiming that FBCTRA failed to implement its policy to operate a safe road because of the confusing and misleading traffic-control devices; a general safety policy does not vitiate a governmental unit's discretion in roadway design. *See Crossland*, 781 S.W.2d at 433.

Accordingly, appellees' pleadings do not affirmatively demonstrate jurisdiction over these claims. However, the same pleadings do not affirmatively negate the trial court's jurisdiction over these claims; appellees do not specify whether the traffic-control devices were inadequate, or the warning signs were negligently located, because of FBCTRA's negligent implementation of the construction plans.[7] Consequently, we reverse the trial court's order denying FBCTRA's plea relative to this claim, but remand for further proceedings after the trial court allows appellees a reasonable opportunity to amend their pleadings. *See Miranda*, 133 S.W.3d at 226–27; *see also Koseoglu*, 233 S.W.3d at 839–40.

was intended to direct left-turning motorists to stop presented a condition because it actually directed some motorists to proceed. 519 S.W.2d at 856–58. Therefore, the governmental entity's design decision was held to present a condition because it conveyed traffic-control information other than intended. In the present case, while appellees allege the signs were "misleading" and "confusing," there are no allegations that the signs conveyed unintended traffic-control information creating a dangerous premises condition. Thus, we decline to apply *Sparkman* to appellees' claim.

7. *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex.1994) ("'[A]ctions which require obedience to orders . . . are ministerial.'"); *see also Siders*, 970 S.W.2d at 193

(holding negligent-construction claim regarding a stop sign was merely a disguised design-defect claim because plaintiffs' witnesses admitted road was constructed as designed and plaintiffs agreed the design plans did not specify the removal of the stop sign).

FBCTRA contends certain photographs of signage at the FM 1093–Gaston Road intersection incorporated within design documents of the intersection conclusively establish the "Do Not Enter" and "Wrong Way" signs were placed in accord with design plans at the time of the accident. While these documents appear to indicate the signs were placed as designed by August 13, 2008, they do not reflect whether the signs were placed as designed at the time of the accident. Thus, we reject FBCTRA's contention.

### 3. Duty to Maintain Pavement Markers

■ FBCTRA next challenges appellees' claim that pavement markers on FM 1093 were in a condition of disrepair at the time of the accident such that they failed to warn motorists they were traveling in the wrong direction. FBCTRA contends it was not responsible for maintenance of the pavement markers.

■ "[A] premises-liability defendant may be held liable for a dangerous condition on the property if it 'assum[ed] control over and responsibility for the premises,' even if it did not own or physically occupy the property." *County of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex.2002) (quoting *City of Denton v. Van Page*, 701 S.W.2d 831, 835 (Tex.1986)). "The relevant inquiry is whether the defendant assumed sufficient control over the part of the premises that presented the alleged danger so that the defendant had the responsibility to remedy it." *Id.*

FBCTRA refers to the "Project Maintenance" section of the agreement between it and TxDOT ("TxDOT–FBCTRA agreement"), in which it is expressed that TxDOT is to maintain pavement markers on FM 1093 upon completion of the Fort Bend County Tollway project. However, FBCTRA did not present any evidence that the project was in the post-completion stage at the time of the accident.[8] Thus, indulging every reasonable inference and resolving all doubts in appellees' favor, FBCTRA has not conclusively established that it had no maintenance responsibilities relative to the pavement markers.[9]

However, this conclusion does not end our review of appellees' pavement markers claim because we are obliged to ascertain the existence of subject-matter jurisdiction. *See Univ. of Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser*, 140 S.W.3d 351, 358 (Tex.2004), *superseded by statute on other grounds*, Tex. Gov't Code Ann. § 311.034 (Vernon 2005). We identify *sua sponte* a pleading deficiency relative to appellees' claim concerning the condition of the pavement markers.

Appellees allege the "pavement markers were in a condition to insufficiently perform their traffic control function . . . ." As such, the claim concerns the condition of a traffic-safety device and, thus, falls under the provisions of subsection 101.060(a)(2). Tex. Civ. Prac. & Rem.Code Ann. § 101.060(a)(2); *see also Sullivan*, 33

---

8. In the TxDOT–FBCTRA agreement, "Project" is defined in relevant part as the "construction of the interchanges connecting the [Tollway] at FM 1464/FM 1093 and at SH 99 . . . ." FBCTRA does not cite any portion of the record supporting that the project was complete. In the statement of facts section of its brief, FBCTRA expresses, "By the time of the accident on January 1, 2007, construction of the Tollway in Fort Bend County had been completed." Appellees do not dispute this statement in their brief. However, even accepting this statement as true, *see* Tex.R.App. P. 38.1(g), it does not necessarily establish that the project was also complete at that time.

We also recognize that both FBCTRA and appellees rely on the "Project Maintenance" section in making their respective arguments. However, we refuse to construe appellees' reliance on this section as a deliberate admission that the project is complete. *See Regency Advantage Ltd. P'ship v. Bingo Idea–Watauga, Inc.*, 936 S.W.2d 275, 278 (Tex.1996) ("A judicial admission must be a clear, deliberate, and unequivocal statement.").

9. FBCTRA also mentions, without argument, subsection 224.032(a)(1) of the Transportation Code which expresses that the State Highway Commission shall provide for the efficient maintenance of the state highway system. Tex. Transp. Code Ann. § 224.032(a)(1) (Vernon 1999). This language, however, says nothing about whether other governmental entities can become contractually obligated to maintain a segment of a state highway.

S.W.3d at 11 (explaining that complaint regarding condition of pavement markers falls under subsection 101.060(a)(2)). To affirmatively demonstrate the trial court's jurisdiction, appellees must allege "the condition of [the pavement markers] [was] not corrected by the responsible governmental unit within a reasonable time after notice[.]" Tex. Civ. Prac. & Rem.Code Ann. § 101.060(a)(2). This notice can be either actual or constructive. *See City of Austin v. Lamas*, 160 S.W.3d 97, 101–03 (Tex.App.-Austin 2004, no pet.); *Robnett v. City of Big Spring*, 26 S.W.3d 535, 538 (Tex.App.-Eastland 2000, no pet.). Such an allegation is absent from appellees' pleadings. Accordingly, we remand for further proceedings after the trial court allows appellees a reasonable opportunity to amend their pleadings pertaining to the condition of pavement markers. *See Miranda*, 133 S.W.3d at 226–27; *see also Koseoglu*, 233 S.W.3d at 839–40.

## C. Negligent Implementation of Policy to Operate Tollway Safely

We next consider FBCTRA's challenge to appellees' negligent-implementation claims relative to the Tollway. As stated *supra*, a governmental unit is not immune from suit for negligent implementation of policy, such as negligent construction or maintenance. *See Mitchell*, 855 S.W.2d at 745.

Appellees allege all defendants agreed "to manage, regulate, oversee, construct, maintain, and operate ... the [T]ollway safely," and "formulated a policy to monitor the [T]ollway entrances and exits to prevent wrong-way traffic and unauthorized vehicles on the [T]ollway." According to appellees, this policy was negligently implemented because the Tollway was constructed with minimal road shoulders and without traditional tollbooths and toll plazas from which wrong-way drivers could be detected by law-enforcement personnel and other persons.

We once again note that FBCTRA's discretion for roadway design was not limited by any general policy to operate the Tollway safely. *See Crossland*, 781 S.W.2d at 433. Appellees also specifically allege that FBCTRA made a policy decision to monitor all Tollway entrances for wrong-way drivers. Nevertheless, FBCTRA had discretion in choosing how to monitor the Tollway, and it is unclear whether appellees are alleging that the absence of traditional toll booths and toll plazas caused a premise defect or simply failed to warn of an existing defect or make it reasonably safe.[10] It is also unclear whether the failure to construct wider road shoulders resulted from discretionary formulation of policy or negligent implementation of policy. *See Siders*, 970 S.W.2d at 193 (emphasizing that negligent implementation claim fails because road was constructed as designed). Accordingly, we remand for the trial court to allow appellees a reasonable opportunity to amend their pleadings. *See Miranda*, 133 S.W.3d at 226–27; *see also Koseoglu*, 233 S.W.3d at 839–40.

## D. Joint Enterprise

Finally, we consider FBCTRA's arguments relative to appellees' joint-enterprise theory of liability.

An essential element of joint enterprise is an agreement, express or implied, among the group members. *Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 222 (Tex.App.-Houston [14th Dist.] 2008,

---

**10.** To the extent appellees allege that the lack of toll booths and toll plazas caused a dangerous condition because there were no people monitoring the roadway, they fail to allege a premise defect claim under the TTCA. Such a "condition" concerns the activity of people, not the condition of the roadway itself. *See Garrett Place*, 972 S.W.2d at 144.

no pet.). Joint enterprise is not an independent basis for waiver of immunity, but may result in waiver of immunity under the TTCA where a governmental entity would be liable for another's negligence if the governmental entity were a private person. *Id.* at 218–19 (quoting *Tex. Dep't of Transp. v. Able,* 35 S.W.3d 608, 613 (Tex.2000)).

Appellees allege that FBCTRA, HCTRA, Fort Bend County, Harris County, TxDOT, and Michael Stone Enterprises "had an express or implied agreement to [construct,] develop, operate, and maintain the Westpark Tollway." In the statement of facts section of its brief, FBCTRA expresses, "The evidence demonstrated that there were two agreements pertaining to the Tollway: an agreement between Harris County and Fort Bend County ["Counties' agreement"] ...; and [the TxDOT–FBCTRA agreement.]" We assume this statement is true because appellees do not contradict its validity or accuracy. *See* Tex.R.App. P. 38.1(g); *see also Parker v. Walton,* 233 S.W.3d 535, 537 n. 1 (Tex. App.-Houston [14th Dist.] 2007, no pet.).

As an initial matter, FBCTRA asserts that it is not a party to the Counties' agreement. We agree and thus hold that the Counties' agreement does not support a claim of joint-enterprise liability against FBCTRA. Thus, we turn our attention to the TxDOT–FBCTRA agreement.

FBCTRA argues that the TxDOT–FBCTRA agreement cannot support a joint-enterprise theory of liability because such a theory is proscribed under section 271.160 of the Local Government Code. Section 271.160 provides, "A contract entered into by a local government entity is not a joint enterprise for liability purposes." Tex. Loc. Gov.Code Ann. § 271.160 (Vernon 2005).

Appellees argue section 271.160 does not apply to FBCTRA because "toll road authority" is not mentioned in the definition of "local governmental entity."

"Local government entity" is defined in relevant part as a

> political subdivision of this state, other than a county or unit of state government, as that term is defined by Section 2260.001, Government Code, including a:
>
> . . .
>
> (C) special-purpose district or authority, including any levee improvement district, drainage district, irrigation district, water improvement district, water control and improvement district, water control and preservation district, freshwater supply district, navigation district, conservation and reclamation district, soil conservation district, communication district, public health district, emergency service organization, and river authority.

*Id.* § 271.151(3)(C) (Vernon 2005). Apparently, appellees contend this definition is exclusive. However, " '[i]ncludes' and 'including' are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded." Tex. Gov't Code Ann. § 311.005(13) (Vernon 2005); *see also House of Yahweh v. Johnson,* 289 S.W.3d 345, 351 (Tex.App.-Eastland 2009, no pet.). Therefore, the absence of "toll road authority" from the enumerated entities in subsection 271.151(3) does not preclude FBCTRA from being a local government entity.

FBCTRA presented with its plea an order by the County Commissioners Court of Fort Bend County approving the creation of FBCTRA, a "local government corporation." A local government corporation is a "governmental unit" as that term is used in the TTCA, and its operations "are governmental, not proprietary, functions."

Tex. Transp. Code Ann. § 431.108 (Vernon 2007).[11] "A local government corporation may be created to aid and act on behalf of one or more local governments to accomplish any governmental purpose of those local governments." *Id.* § 431.101(a) (Vernon Supp. 2009). A local government corporation has the powers to promote and develop transportation facilities. *See* Tex. Transp. Code Ann. §§ 431.062(b) (Vernon 2007), .101(b) (Vernon Supp. 2009).

As a local government corporation, FBCTRA acts on behalf of Fort Bend County. *See* Tex. Transp. Code Ann. § 431.003(4) (Vernon 2007). However, by providing that local-government corporations are "governmental units" performing governmental functions, and by imbuing them with "nature, purposes, and powers," it is clear the legislature intended such corporations to be separate and discrete political subdivisions from those they act on behalf of and aid. *See Ben Bolt–Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self–Ins. Fund,* 212 S.W.3d 320, 325–26 (Tex.2006). In *Ben Bolt,* the supreme court recognized that "[t]he only entities expressly excluded from [the definition of local-government entity under subsection 271.151(2) ] are counties and units of state government. . . ." *Id.* at 328. FBCTRA is

a political subdivision of the state, but is neither a unit of state government nor a county. Hence, FBCTRA is a local-government entity as defined in subsection 271.151(3) and is entitled to the protections of section 271.160.

Appellees also argue that section 271.160 is not applicable because the TxDOT–FBCTRA agreement does not comport with the definition of a contract as used in subchapter I of the Local Government Code. In subchapter I, the phrase "Contract subject to this subchapter" is defined as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity. . . ." *Id.* at § 271.151(2) (Vernon 2005). The phrase "contract subject to this subchapter" is used in several sections of subchapter I. *See id.* §§ 271.152, .154 (Vernon 2005), .153 (Vernon Supp. 2009). However, the legislature selected the word "contract," as opposed to the phrase "contract subject to this subchapter," when it drafted section 271.160. Construing the term "contract" according to its common usage, it is clear the legislature intended section 271.160 to refer to *any* contract entered into by a local governmental entity. *See* Tex. Gov't Code Ann. § 311.011(a) (Vernon 2005).[12] We hold section 271.160

---

**11.** The TTCA defines "governmental unit" as

(A) this state and all the several agencies of government that collectively constitute the government of this state, including other agencies bearing different designations, and all departments, bureaus, boards, commissions, offices, agencies, councils, and courts;

(B) a political subdivision of this state, including any city, county, school district, junior college district, levee improvement district, drainage district, irrigation district, water improvement district, water control and improvement district, water control and preservation district, freshwater supply district, navigation district, conservation and reclamation district, soil conservation

district, communication district, public health district, and river authority;

(C) an emergency service organization; and

(D) any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution.

Tex. Civ. Prac. & Rem.Code Ann. § 101.001(3) (Vernon 2005).

**12.** *See also FKM P'ship, Ltd. v. Bd. of Regents of Univ. of Houston Sys.,* 255 S.W.3d 619, 633 (Tex.2008) ("We use definitions prescribed by the Legislature and any technical or particular meaning the words have acquired, but otherwise, we construe the statute's words

refers to any contract entered into by a local-government entity. Therefore, the TxDOT–FBCTRA agreement does not subject FBCTRA to joint-enterprise liability. Accordingly, the trial court's denial of FBCTRA's plea is reversed and we dismiss appellees' claim of joint-enterprise liability against FBCTRA for want of jurisdiction. *See Miranda*, 133 S.W.3d at 228.

## IV.  CONCLUSION

We reverse the trial court's order denying FBCTRA's plea and remand for further proceedings after the trial court allows appellees a reasonable opportunity to amend their pleadings relative to the following claims:

- Premise defect resulting from failing to install warning flashers, cameras, and non-discretionary signs;
- Premise defect resulting from inadequate barricades, insufficient traffic control, and signs placed on the wrong side of the road;
- Premise defect resulting from deficient condition of pavement markers;  and
- Premise defect for constructing Tollway with minimal shoulders and without traditional tollbooths and toll plazas.

We reverse that portion of the trial court's order denying FBCTRA's plea challenging appellees' claim of joint-enterprise liability against FBCTRA and render judgment dismissing this claim for want of jurisdiction.

HUDSON, J., dissenting.

J. HARVEY HUDSON, Senior Justice, dissenting.

We have this same day issued a majority and dissenting opinion in the companion

according to their plain and common meaning unless a contrary intention is apparent

case of *Texas Department of Transportation v. Zuleima Olivares, et al.*, 316 S.W.3d 89, (Tex.App.Houston [14th Dist.] 2010).  For the same reasons articulated in my dissenting opinion in that case, I cannot join my colleagues in this case. Accordingly, I must respectfully dissent.

from the context, or unless such a construction leads to absurd results.").