**ORTHOPEDIC RESOURCES, INC. and JTW Medical Products, Inc., Appellants,**

v.

**Kara SWINDELL and Jeremy Swindell, Appellees.**

**No. 05–09–01543–CV.**

Court of Appeals of Texas, Dallas.

Nov. 8, 2010.

Rehearing Overruled Dec. 21, 2010.

---

Jason Matthew Graham, Paul William Bennett, Fletcher, Farley, Shipman & Salinas, LLP, Douglas D. Fletcher, Fletcher & Springer, L.L.P., Richard A. Harwell, Fletcher Farley, Dallas, for Appellants.

Christopher A. Kalis, Law Office of Christopher Kalis, Plano, James H. Moody, III, Quiling, Selander, Cummiskey & Lownds, P.C., Brian P. Lauten, The Lauten Firm, P.C., Dallas, for Appellees.

Before Justices MOSELEY, O'NEILL, and FRANCIS.

## OPINION

Opinion By Justice MOSELEY.

This is an interlocutory appeal from the denial of a motion to dismiss an alleged health care liability claim for failure to timely file an expert report. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b) (West Supp.2010). The outcome of the appeal depends on whether appellant JTW Medical Products, Inc.,[1] a medical device distributor, was acting within the course and scope of its contract with a health care provider when it gave instructions to the Swindells on the use of durable medical equipment. We affirm the trial court's order.

### BACKGROUND

Kara Swindell was a patient of Dr. John Crates and the Plano Orthopedic Sports Medicine clinic. On March 19, 2008, Dr. Crates operated on Kara's right foot to remove a bunion. Following the surgery, Crates prescribed a durable medical device, known as the VascuTherm, for cold compression therapy. The device consists of a reusable pump and a single-patient therapy wrap that allows the pump to cir-

Chris R. Norris, Joseph A. Barbknecht, Laci Dreher, The Barbknecht Firm, Plano,

---

1. Orthopedic Resources, Inc. also appealed, but later filed a motion to dismiss, which was granted.

culate cold fluid around the extremity. The device is a FDA Class II device and requires a physician's prescription for use. Crates prescribed the device with instructions that it be used for thirty minutes at a time then off for two hours.

JTW had a contract with the clinic to supply durable medical equipment prescribed by the clinic's doctors to their patients. The contract provided that JTW was an independent contractor. JTW's president, John Wall, provided the device to Kara and, while she was in surgery, showed the device to her husband, Jeremy. In his deposition, Wall said he told Jeremy "that the VascuTherm unit could be used 24/7, as tolerable, as long as there was no numbness, tingling, or pain." The Swindells alleged that Wall signed Crates's name on a pre-printed prescription form for the device on an insurance document and that Jeremy signed the form at Wall's request. They alleged that because there was no written instruction manual included with the device, they relied on Wall's oral instructions to use the device 24/7. They alleged that as a result of Kara's use of the device pursuant to Wall's instructions, she suffered frostbite and the partial or total amputation of four of her toes.

The Swindells sued JTW and the manufacturer and supplier of the device alleging causes of action for products liability and negligence. They never sued Crates or the clinic. Several months after the lawsuit was filed, and after substantial discovery had been completed, JTW filed a motion to dismiss the lawsuit with prejudice under section 74.351(b) of the civil practice and remedies code. JTW contended that it was a health care provider, the Swindells' claims were health care liability claims, and they failed to file the required expert report within 120 days of filing suit. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351. The Swindells responded to the

motion, attaching deposition excerpts and other evidence supporting their contention that JTW was not a health care provider and they were not bringing health care liability claims. After further briefing and evidence submitted by JTW, the trial court conducted a hearing and denied the motion.

## STANDARD OF REVIEW AND APPLICABLE LAW

We review the trial court's decision on a motion to dismiss a health care liability claim for an abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex.2001) (discussing former article 4590i). However, when the issue involves a question of law, such as the interpretation of a statute, we apply a de novo standard of review. *Fudge v. Wall*, 308 S.W.3d 458, 460 (Tex. App.-Dallas 2010, no pet.). The trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex.2002) (per curiam). When reviewing the trial court's resolution of factual issues or matters committed to the trial court's discretion, we may not substitute our judgment for the trial court's judgment. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992). The trial court does not abuse its discretion when it decides factual issues or matters committed to its discretion on conflicting evidence. *See Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978); *Kirkpatrick v. Mem'l Hosp. of Garland*, 862 S.W.2d 762, 776 (Tex.App.-Dallas 1993, writ denied).

Not later than the 120th day after filing suit, a claimant asserting a health care liability claim must serve on each party or the party's attorney one or more expert reports for each physician or health care provider against whom a claim is asserted. TEX. CIV. PRAC. & REM.CODE ANN.

§ 74.351(a). If the claimant does not serve the report, the trial court is required, upon motion by the affected physician or health care provider, to dismiss the claim with prejudice and award reasonable attorney's fees and cost. *Id.* at § 74.351(b).

■ The expert report requirement applies to all claims that fall within the statutory definition of a "health care liability claim." *See Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842, 848 (Tex. 2005). A "health care liability claim" is defined as:

> [A] cause of action *against a health care provider or physician* for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(13) (2005) (emphasis added). The term "health care provider" means any person or entity duly licensed by the State of Texas to provide health care, and includes "an employee, independent contractor, or agent of a health care provider or physician acting in the course and scope of the employment or contractual relationship." *Id.* § 74.001(a)(12)(B)(ii).

### ANALYSIS

■ According to the record, it is undisputed that the clinic was a health care provider and JTW's contract with the clinic provides that JTW was an independent contractor. The remaining question is whether JTW was acting in the course and scope of its contractual relationship when, through Wall, it instructed the Swindells as to use of the VascuTherm. If it was

not, then the Swindells' claims against JTW are not health care liability claims. This question does not present an issue of statutory interpretation, but of evidence. Therefore, we review the trial court's decision for an abuse of discretion.

The contract between JTW and the clinic identifies the responsibilities of each party. The clinic and its doctors were to provide JTW

> with all information needed to execute equipment delivery, set-up and billing for such equipment and services in a timely manner. [sic] Including any required prescription for DME, identification of any particular patient need or requirement, and background information necessary for [JTW] to assist the patient in supplying DME.

On the other hand, JTW was required to provide "professional and prompt delivery, set-up, patient/patient family member instructions for DME (durable medical equipment) use and function of all DME for [clinic] clients."

JTW argues Wall's statement that the VascuTherm device could be used 24/7, as tolerated, was within the scope of the contract requirement that it provide instructions on the device's use and function. The Swindells disagree. They alleged JTW exceeded the scope of the contract by overriding the doctor's prescription for use of the device, i.e., thirty minutes on cold and two hours off. Jeremy's deposition indicates that when he asked Wall if Kara should take it off at night, Wall said no, "the best thing is, and the advice that I give my patients is wear it 24/7. The longer you wear it, will prevent pain, swelling and blood clot." The Swindells also alleged that because Wall signed Crates's name to the prescription form, they were led to believe JTW was empowered to give directions for the use of the device contrary to the doctor's post-operative order.

Crates, the physician, essentially agreed with the Swindells. He stated by deposition that JTW was not a health care provider like a pharmacist or registered nurse. According to Crates, all JTW was to do was "to deliver the machine. You can obviously show how it turns on and off, but not specific instructions on how long should I use this."

## CONCLUSION

On this record, the facts are disputed about whether Wall's statement about using the device 24/7 was in the course and scope of JTW's contract with the clinic. The trial court resolved this dispute against JTW. Because the trial court could have reasonably concluded that JTW was not a health care provider because it was not acting in the course and scope of its contract, we conclude the trial court did not abuse its discretion by denying the motion to dismiss. *See Walker*, 827 S.W.2d at 839–40; *Davis*, 571 S.W.2d at 862.

We affirm the trial court's order.