# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00079-CV

**Doctors Data, Inc., Appellant**

**v.**

**Ronald Stemp and Carrie Stemp, Appellees**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
NO. D-1-GN-09-002279, HONORABLE TIM SULAK, JUDGE PRESIDING**

---

## C O N C U R R I N G   O P I N I O N

I concur in the majority's judgment. I write separately to analyze the controlling issue, whether Doctors Data met its burden to establish that it was acting in the course and scope of an independent contractor relationship with Dr. Caquias. *See* Tex. Civ. Prac. & Rem. Code § 74.001(a)(12)(B)(ii) (defining "health care provider" to include "independent contractor . . . of physician acting in the course and scope of . . . the contractual relationship"). Because I conclude that it did not, I agree with the majority's judgment affirming the trial court's order denying Doctors Data, Inc.'s motion to dismiss based on section 74.351 of the Civil Practice and Remedies Code. *See id.* § 74.351.

As noted by the majority, we review the trial court's decision on a motion to dismiss a health care liability claim for an abuse of discretion. *See American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001) (discussing former article 4590i); *Orthopedic Res.,*

*Inc. v. Swindell*, 329 S.W.3d 70, 72 (Tex. App.—Dallas 2010, pet. denied) (discussing chapter 74). We apply a de novo standard of review, however, when the issue involves the interpretation of a statute. *See Texas W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012); *Swindell*, 329 S.W.3d at 72; *Brown v. Villegas*, 202 S.W.3d 803, 805 (Tex. App.—San Antonio 2006, no pet.).

To be entitled to the protections of chapter 74, one of Doctors Data's burdens was to establish that it was a "health care provider" as that term is defined in chapter 74. *See* Tex. Civ. Prac. & Rem. Code § 74.001(a)(12) (defining "health care provider"); *Brown*, 202 S.W.3d at 804, 806 (noting that defendant laboratory that reviewed pap smear slide had burden to present evidence that it was health care provider); *Obstetrical & Gynecological Assocs., P.A. v. Hardin*, No. 01-13-00236-CV, 2013 Tex. App. LEXIS 13995, at *5–9 (Tex. App.—Houston [1st Dist.] Nov. 14, 2013, no pet.) (mem. op.) (noting that "moving party has burden to present evidence that the State of Texas has certified it as a health care provider" and concluding that defendant "failed to prove that it is a healthcare provider for which an expert report was required"); *Akhter v. Smooth Solutions DFW One, LLC*, No. 04-11-00263-CV, 2012 Tex. App. LEXIS 7370, at *9–10 (Tex. App.—San Antonio Aug. 31, 2012, no pet.) (mem. op.) (concluding that "simply no evidence in the appellate record that shows . . . entities are health care providers . . . or physicians," that entity "failed to carry its burden to establish that it was a health care provider or a physician," and that trial court erred in dismissing claims).

Doctors Data, an Illinois corporation, does not contend that it falls within the definition of a health care provider under subsection (a)(12)(A). *See* Tex. Civ. Prac. & Rem. Code § 74.001(a)(12)(A) ("'Health care provider' means any person, partnership, professional association,

corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care, including . . . .").

In its briefing on appeal, Doctors Data also concedes that "Appellees are accurate in stating that Doctors Data has produced no evidence that co-defendants Nutrigenomics, Inc. or CARE Clinics, Inc. were licensed, certified, registered or chartered by the State of Texas to provide health care." *See id.*; *see also Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983) ("Assertions of fact, not pled in the alternative, in the live pleadings of a party are regarded as formal judicial admissions."). By failing to produce evidence that Nutrigenomics or Care Clinics was a health care provider, Doctors Data did not establish that it was acting as a health care provider based on a contractual relationship with Nutrigenomics or Care Clinics. *See* Tex. Civ. Prac. & Rem. Code § 74.001(a)(12)(B)(ii) (defining "Health Care Provider" to include "independent contractor . . . of a health care provider . . . in the course and scope of the . . . contractual relationship").

Doctors Data's only possible ground that it has raised on appeal to support its claim that it is a health care provider is its argument that it was an "independent contractor" acting in the "course and scope of [a] contractual relationship" with Dr. Caquias, who is a physician under chapter 74.[1] *See id.* (defining "Health Care Provider" to include "independent contractor . . . of a physician . . . in the course and scope of the . . . contractual relationship"); *see also id*. § 74.001(23)

---

[1] Although Doctors Data attached the Stemps' petition to its motion to dismiss, it does not assert on appeal that its status as a health care provider was established by the plaintiffs' allegations in their pleadings. *See House of Yahweh v. Johnson*, 289 S.W.3d 345, 352 (Tex. App.—Eastland 2009, no pet.) (noting that "[i]n many health care liability cases, a party's status as a health care provider can be determined from the plaintiff's allegations" and that "[a] plaintiff's pleadings that he or she has complied with the notice requirements of chapter 74 or that a defendant is a health care provider may constitute a judicial admission that the opposing party is a health care provider" (citing *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 904–05 (Tex. 2000))).

(defining "physician"). Because the statute does not define the terms "independent contractor" or "contractual relationship," I would give the terms their ordinary meanings. *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) ("Undefined terms in a statute are typically given their ordinary meaning, but if a different or more precise definition is apparent from the term's use in the context of the statute, we apply that meaning.").

Applying the ordinary meaning of a "contractual relationship," the statute requires a contract between the independent contractor and the physician. *See* Tex. Civ. Prac. & Rem. Code § 74.001(a)(12)(B)(ii); *TGS-NOPEC Geophysical Co.*, 340 S.W.3d at 439. To form a binding contract, the following elements are required: "(1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *KW Constr. v. Stephens & Sons Concrete Contractors, Inc.*, 165 S.W.3d 874, 883 (Tex. App.—Texarkana 2005, pet. denied) (citing *Buxani v. Nussbaum*, 940 S.W.2d 350, 352 (Tex. App.—San Antonio 1997, no writ)). Thus, assuming without deciding that Doctors Data was an "independent contractor," Doctors Data had to present evidence to establish the elements of a contract between itself and Dr. Caquias.[2] *See id.*

In his affidavit, Dr. Caquias testified:

---

[2] Because it is not necessary to the disposition of this appeal, I assume without deciding that Doctors Data is an independent contractor. "An independent contractor is 'one who, in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect to all its details.'" *Cherqui v. Westheimer St. Festival Corp.*, 116 S.W.3d 337, 347 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (quoting *Duran v. Furr's Supermarkets, Inc.*, 921 S.W.2d 778, 786 (Tex. App.—El Paso 1996, writ denied) (quoting *Pitchfork Land & Cattle Co. v. King*, 346 S.W.2d 598, 602–03 (1961))).

> Plaintiff Ronald Stemp was a patient at Care Clinics from approximately November 2007 until approximately September 2008. Mr. Stemp sought medical care from Care Clinics for the chief complaints of depression, apathy, memory loss and fatigue. While a patient at Care Clinics, I examined Mr. Stemp, ordered treatment, ordered laboratory tests, and reviewed laboratory test results.
>
> . . .
>
> Care Clinics did not own or operate a laboratory for testing metals in urine, blood, and feces. Therefore, when patients of mine at Care Clinics required laboratory studies for metal testing I requested an outside laboratory perform the tests. Doctor Data, Inc. performed many laboratory tests, which I ordered on Mr. Stemp. The tests included testing for metals and essentials in urine, blood, and feces.

The evidence before the trial court also included a written agreement between Doctors Data and Nutrigenomics, Nutrigenomics's assumed name certificate that it would be conducting business under the assumed name of "Care Clinics," and excerpts from Ronald Stemp's deposition with exhibits.[3] The exhibits included Mr. Stemp's consents for treatment from Care Clinics and "Care Clinics Treatment Questionnaire[s]" signed by Mr. Stemp and Dr. Caquias.

Crediting this evidence, the trial court could have found that Mr. Stemp was a patient of Care Clinics and that Dr. Caquias was acting in his capacity as an employee of Care Clinics when he treated Mr. Stemp, including when he ordered and reviewed the laboratory test results from Doctors Data. Based on these findings, the trial court also could have reasonably concluded that the contractual relationship, if any, was between Doctors Data and Care Clinics, not Dr. Caquias.[4] *See*

---

[3] The assumed name certificate shows that it was filed in the Office of the Secretary of State of Texas in 2006.

[4] In its briefing to this Court, Doctors Data states: "By virtue of Doctors Data's written agreement with Care Clinics, Dr. Caquias ordered Doctors Data to perform laboratory work on Ronald Stemp and Doctors Data performed the tests ordered by Dr. Caquias." It also states: "Care

*Swindell*, 329 S.W.3d at 74 (noting that, based on evidence, trial court "could have reasonably concluded that [defendant] was not a health care provider").

On this record, I cannot conclude that the trial court abused its discretion by denying Doctors Data's motion to dismiss. *See id.* at 72 ("The trial court does not abuse its discretion when it decides factual issues or matters committed to its discretion on conflicting evidence." (citing *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978))); *Brown*, 202 S.W.3d at 806 (reversing trial court's order dismissing claims because "record does not contain any evidence establishing that [the laboratory that reviewed pap smear] is 'duly licensed, certified, or registered or chartered by the State of Texas to provide health care' or that [the laboratory] is an independent contractor of [the physician]"). Thus, I concur in the judgment.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Field, and Aboussie*

Filed:   July 31, 2014

* Before Marilyn Aboussie, Chief Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code § 74.003(b).

_____

Clinics entered into a contract with Doctors Data for the precise purpose of submitting body fluid and other samples to the laboratory to perform tests associated with medical treatment for heavy metal poisoning and other medical conditions."

6